# No. 18,802.

CITY AND COUNTY OF DENVER, ET AL. *v.*
ARTHUR N. SWEET, ET AL.
(329 P. [2d] 441)

Decided August 30, 1958.

42

Mr. JOHN C. BANKS, City Attorney, Mr. W. KEITH PETERSON, Assistant, for plaintiffs in error.

Mr. CHARLES D. BROMLEY, Mr. GEORGE LOUIS CREAMER, Mr. CHARLES GINSBERG, Mr. CHARLES MURDOCK, for defendants in error.

*En Banc.*

MR. JUSTICE SUTTON delivered the opinion of the Court.

DEFENDANTS in error were plaintiffs and plaintiffs in error were defendants below and will be referred to here as they there appeared or by name.

On August 7, 1958, the Denver city council adopted Ordinance No. 280, Series of 1958, which called for a special election to be held September 9, 1958, and which would submit to the electors the question as to whether a charter amendment should be adopted authorizing the council to adopt an ordinance levying an income tax within certain prescribed limits and providing for the purposes for which the tax could be expended.

On August 8, 1958, plaintiffs filed their complaint in the Denver district court alleging that as qualified citizens and electors of the City and County of Denver they challenged the power and authority of the Council to hold the election. Plaintiffs sought relief against the defendants and others not parties to this appellate proceeding by way of a declaratory judgment and preliminary and permanent injunctions.

The matter was heard by the trial court on pleadings that raised no factual issues and judgment was rendered in favor of plaintiffs. Motion for new trial was dispensed with, and defendants seek reversal in this court.

Since the matter is one of great public importance and should be determined at the earliest possible time, we have, at the request of counsel for both sides, advanced

it on the docket and the matter being at issue, we proceed to a determination.

As a prelude to this controversy, it appears from the record that in 1957 the City devised a program of capital improvements deemed necessary by the Mayor of Denver, his committees and the City Council, and the revenue from the proposed tax is to be used for the purpose of financing these projects. That on September 7, 1957, Council had adopted a city income tax ordinance. This was protested by petitions demanding that the matter be submitted to the voters of the City by referendum. The Council then repealed the protested ordinance and thereafter submitted a proposed income tax ordinance to the electors at a special election on December 17, 1957. This was rejected by the voters.

We note that the trial court found against the City on three basic grounds, viz: (1) that the City had no power to levy this type of tax; (2) that the matter having been once submitted to the voters could not within two years be again submitted, and (3) that the granting of injunctive relief was not an unconstitutional interference with the Council's legislative powers.

The City on writ of error makes no issue of the injunctive relief granted by the trial court, but does urge that:

1. Home Rule cities, such as the City and County of Denver, have the right to enact laws equal to and concurrent with state laws to the extent that such local laws deal solely with local and municipal matters; that the power to levy an income tax is a power essential and proper to the full exercise of the City's right of self government and in the absence of a direct prohibition in the state constitution the City has the right and power to enact such a tax.

2. Article XX, Section 5, of the state constitution prohibiting re-submission within two years of a question once submitted, does not forbid submission of the ordinance in question, it being a different ordinance; i.e.,

not one seeking to enact the tax but only to empower the Council to do so.

As we view the record, the only question we need to determine is:

*DOES A COLORADO HOME RULE CITY HAVE THE LEGAL AUTHORITY TO ENACT A CITY IN-COME TAX BY COUNCIL ACTION OR BY VOTE OF THE QUALIFIED ELECTORS, OR BY BOTH COUN-CIL ACTION AND VOTE OF SAID ELECTORS?*

This question is answered in the negative.

In 1936 the people of Colorado amended Article X of the state constitution by the adoption of Section 17 which reads:

"The general assembly may levy income taxes, either graduated or proportional, or both graduated and pro-portional, for the support of the state, or any political subdivision thereof, or for public schools, and may, in the administration of an income tax law, provide for special classified or limited taxation or the exemption of tangible and intangible personal property."

The City contends that the wording of Article X, Sec-tion 17, however, is not applicable to deny it this taxing power. It cites the following constitutional provisions to uphold its position, to-wit:

1. Article XX, Section 6, of the Colorado Constitution adopted November 4, 1902, and amended November 5, 1912, effective January 22, 1913, which provides that the people of charter cities and towns shall always have the power to make, amend and replace their charters and which:

" * * * shall be its organic law and extend to all its local and municipal matters.

"Such charter and the ordinances made pursuant thereto in such matters shall supersede within the terri-torial limits and other jurisdiction of said city or town any law of the state in conflict therewith."

And a further paragraph of Article XX, Section 6, which states:

"It is the intention of this article to grant and confirm to the people of all municipalities coming within its provisions the full right of self-government in both local and municipal matters and the enumeration herein of certain powers shall not be construed to deny such cities and towns, and to the people thereof, any right or power essential or proper to the full exercise of such right."

2. The City also points to Article X, Section 7, of the constitution, adopted prior to 1936, which provides:

"The general assembly shall not impose taxes for the purposes of any county, city, town or other municipal corporation, but may by law, vest in the corporate authorities thereof respectively, the power to assess and collect taxes for all purposes of such corporation."

We do not deem it essential to the problem presented to determine the City's second ground of reversal. Thus we will not discuss the doctrine of revivor of ordinances once submitted nor the distinction urged of a charter amendment submitted by Council as being different from a referred ordinance — though we point out that here both relate to one primary subject.

Although the City has not urged it as a ground for reversal, we deem it pertinent to this decision to say that in view of our holding hereinafter set forth, the action of the trial court in enjoining the plaintiffs in error and the other defendants below was proper relief. *Pueblo v. Stanton* (1909), 45 Colo. 523, 102 Pac. 512; *Gorman v. City of Phoenix* (1950), 70 Ariz. 59, 216 Pac. (2d) 400.

We proceed now to consider the primary question.

■ Colorado is one of those states of the Union which has constitutional provisions relating to home rule cities. We know of no state with any broader provisions than ours. By Article XX the people in their sovereign capacity created a new agency of government. They vested it with some of the powers previously exclusively reposed in the general assembly. But this grant of power to municipal corporations did not give them authority

to legislate on other than their express or reasonably implied fields of local concern. Their power is only a delegated one. This is different from the general assembly which by authority of the sovereign people may legislate upon any subject it desires except as limited by the federal and state constitutions. See *Denver v. Tihen* (1925), 77 Colo. 212, 235 Pac. 777.

This court has held that our state constitution is not a grant of legislative power. That in the absence of the grants of power to the United States Constitution and the express inhibitions and limitations in the State Constitution, the legislative power of the state is as all embracing and as supreme as the legislative power of the British Parliament. *Colacino v. People* (1927), 80 Colo. 417, 252 Pac. 350.

In a four to three decision in *Denver v. Mt. States Tel. & Tel. Co.* (1919), 67 Colo. 225, 184 Pac. 604, there appears a lengthy discussion of the powers of home rule cities. That case was later overruled by *People v. Mt. States Tel. & Tel. Co.* (1952), 125 Colo. 167, 243 P. (2d) 397, on the ground that the regulation of telephone rates is a matter of statewide rather than local concern. The prime difficulty with the overruled telephone decision, supra, as it relates to its discussion of Article XX, is that it failed to distinguish between delegated and inherent powers to legislate. The thinking of that case has permeated some of the actions of our home rule cities to the point where today they think of themselves as being like medieval city-states with plenary powers which bar the state from any form of supervision or control of matters which later events show to be either matters of constitutional or statewide concern.

*Denver v. Mt. States Tel. & Tel. Co.,* supra, followed *Londoner v. Denver,* 52 Colo. 15, 119 Pac. 156, which in turn had followed *Denver v. Hallett,* 34 Colo. 393, 83 Pac. 1066. The latter decision said in part in referring to the Denver Charter:

" * * * the statement contained in the first section (of

Article XX) was not intended to be an enumeration of powers conferred * * *. It was intended to confer not only the powers specially mentioned, but to bestow upon the people of Denver every power possessed by the legislature in the making of a charter for Denver."

The Londoner case stated that: "By that decision *(Denver v. Hallett)* we determined that the powers enumerated in section 1 of article XX of the constitution do not constitute a limitation of the powers conferred on the municipality; * * *."

*Denver v. Hallett* concerned a bond issue voted by the people for the erection of a public auditorium. Among other things the court held that to be an implied but not an expressed power of the city. *Londoner v. Denver* sustained the right of the city to purchase or condemn lands for public parks — again as a fairly implied power.

We agree with both the Londoner and Hallett decisions in so far as they hold that Denver has implied powers for local purposes. These were then and are now "every power possessed by the legislature in making the charter for Denver." But as to implied authority the latter phrase can only mean those powers necessary to carry out Denver's functions as a charter city which are either not of state-wide concern or not prohibited by other constitutional provision.

The United States Constitution provides for a national government with a federal system of *states*. All powers not expressly granted the federal government are reserved to the *states or to the people*. United States Constitution, Tenth Amendment. Colorado's Enabling Act, approved by the federal government when we acquired statehood, insured that our state will have a republican form of government. Enabling Act, Article 4. Clearly our federal system does not envisage as a part thereof city-states. It therefore follows that home rule cities can be only an arm or branch of the state with delegated power. That is the kind of power granted by Article XX.

█ This court has long recognized that even in fields of local and municipal matters the authority granted to home rule cities by Article XX may be taken away by subsequent amendments to the constitution. *People ex rel. Carlson, Governor v. Denver* (1915), 60 Colo. 370, 153 Pac. 690 (liquor regulation); *City of Colorado Springs v. People ex rel. Campbell* (1936), 99 Colo. 525, 63 P. (2d) 1244 (liquor license funds); *City and County of Denver v. People* (1939), 103 Colo. 565, 88 P. (2d) 89 (liquor license funds); *Geer v. Rabinoff* (1958), 138 Colo. 8, 328 P. (2d) 375 (State has exclusive control over regulation of liquor sales). Thus, what once was a matter of local or local and state-wide concern may by constitutional amendment become a matter solely of state-wide concern. We recognize that the people have not surrendered their right to amend the constitution in any manner in which they see fit, and such amendments are always valid unless repugnant to the Constitution of the United States. *City and County of Denver v. People,* supra.

In *Armstrong v. Johnson Storage and Moving Co.* (1928), 84 Colo. 142, 268 Pac. 978, it was held that a state statute imposing additional state license fees on motor trucks would be of no concern to a city even though such trucks operated exclusively upon streets of home rule cities. In *Denver v. Bossie,* 83 Colo. 329, 266 Pac. 214, it was held that building a county court house was not a matter of local and municipal concern and that Denver was subject to a state statute giving preference to Colorado building materials. In *Denver v. Tihen,* supra, it was held that Denver was subject to the *public policy of the state* which expressly exempted cemeteries from special assessments for local improvements; and in *Ray v. Denver* (1942), 109 Colo. 74, 121 P. (2d) 886, it was held that the state had preempted small loans regulation by legislating upon it.

█ Whether a particular business activity is a matter of municipal concern to a city under Article XX depends upon the inherent nature of the activity and the impact

or effect which it may have or may not have upon areas outside of the municipality. *People v. Mountain States Tel. & Tel. Co.,* supra.

■ It has long been acknowledged that a municipal ordinance of a home rule city which is in clear opposition to the provisions of a general state law is invalid. *Ray v. Denver,* supra.

Several other of our decisions likewise show that the authority of home rule cities is limited. Among these are: *Denver v. Bridwell* (1950), 122 Colo. 520, 224 P. (2d) 217 (city could not deny statutory right of appeal), and *Merris v. Canon City* (1958), 137 Colo. 169, 323 P. (2d) 614 (city could not deny constitutional right to jury trial).

The intent to preserve state sovereignty is further shown by additional references to the constitution, to-wit:

(1) An additional paragraph in Article XX, Section 6, which reads:

"The statutes of the state of Colorado, so far as applicable, shall continue to apply to such cities and towns, except in so far as superseded by the charters of such cities and towns or by ordinance passed pursuant to such charters."

Here we point out that the supersession provided for in Section 6 is effective solely in local and municipal matters.

(2) Article XIV, Section 13. "Classification of cities and towns. —" which reads:

"The *general assembly* shall provide, by general laws, for the organization and classification of cities and towns. The number of such classes shall not exceed four; and the powers of each class shall be defined by general laws, so that all municipal corporations of the same class shall possess the same powers and be subject to the same restrictions." (Emphasis supplied.)

The question of a home rule city's asserted right to levy an income tax must thus be first examined in the

light of whether the city's powers under Article XX can be limited or altered by:

(a) constitutional change, or,

(b) a broadening of the concept of what constitutes a matter of state-wide concern.

The constitutional provisions and authorities above cited show that both of these situations exist in Colorado.

Without deciding whether the State of Colorado had an inherent right to levy an income tax at the time Article XX was adopted, we consider it helpful here to review the history of this special type of taxation.

An income tax was not a part of the Common Law of England in effect in 1607, the fourth year of the reign of James I, which has been adopted as the law of this state. (C.R.S. '53, 135-1-1.)

The first English income tax was adopted in 1798 as a finance measure in the war against Napoleon. Later abandoned, it was reintroduced about the beginning of the twentieth century. Some of the American states adopted a form of income tax during the War Between the States and in periods thereafter. The Federal Congress in 1894 enacted an income tax which was held to be unconstitutional in *Pollock v. Farmers' Loan and Trust Co.* (1895), 157 U. S. 429, 39 L. Ed. 759, 15 S. Ct. 673, and same case decided on rehearing (1895), 158 U. S. 601, 39 L. Ed. 1108, 15 S. Ct. 912. That decision resulted in the adoption in 1913 of the Sixteenth Amendment to the United States Constitution.

The adoption of Article X, Section 17, gave the general assembly the exclusive power to levy graduated or proportional income taxes, which of course prior to that time could not be done without such a mandate in view of our constitutional provisions requiring uniform application of *all* laws. Colorado Constitution, Article X, Section 3.

Assuming that the general assembly, due to the inherent powers of the state, had the power to adopt a uniform income tax at the time of the adoption of Article

XX, the question arises, did not this authority then flow to the home rule cities as a matter of local and municipal concern? We need not determine this question.

The adoption of Article X, Section 17, foreclosed any claimed power by Denver to tax incomes. Even if Denver once had the power, it now is barred from its use because Section 17 preempted the field of income taxation for the general assembly. The mere fact that the wording is permissive to the state does not make it any less an exclusive power to levy this special type of tax.

The general rule, long followed in Colorado, is that the taxing power and taxing acts are construed strictly against the taxing authority and in favor of the taxpayer. *Gomer v. Chaffee* (1882), 6 Colo. 314; *City and County of Denver v. Tax Research Bureau (1937)*, 101 Colo. 140, 71 P. (2d) 809; *McMillan v. Board County Commissioners of Adams County*, (1945), 113 Colo. 387, 157 P. (2d) 146; *Zimmer v. Hagerman* (1950), 153 Ohio St. 187, 91 N. E. (2d) 254.

It is not for us to determine the wisdom of the provisions of Article X, Section 17. Possibly the fear of permitting a veritable tax jungle of separate city income taxes which could harass and overburden the taxpayers was what prompted the people to determine that such a mode of taxation is to be used only for the state.

The intent of a constitutional provision is to be ascertained from the words thereof when its language is explicit. *People ex rel. Carlson, Governor, v. The City Council of Denver*, supra. The language of Article X, Section 17, is explicit. It says that the general assembly may levy this tax, thus making it solely a matter of state-wide concern. This denies the right to home rule cities. Sound rules of statutory construction require us to hold that Article X, Section 17, having been adopted *after* Article XX, the former has modified all other constitutional provisions in conflict therewith. *People ex rel. Carlson, Governor, v. The City Council of*

*Denver,* supra; 16 C.J.S. 99, Section 26. Proper construc-
tion requires that each part of a constitutional provision
or statute must be read in connection with all other
pertinent sections irrespective of the date they were
adopted. *People ex rel. Carlson, Governor, v. Denver,*
supra.

Whether an amendment modifies or limits what pre-
ceded it depends upon its precise language. Being ex-
plicit Article X, Section 17, overrides Article X, Section
7, by directing that the general assembly may levy this
tax for any political subdivision, which includes home
rule cities among others. The fact that the legislature
has not seen fit so to do is immaterial.

▮▮▮ We also point out that the general assembly
due to Article X, Section 17's precise wording now has
no power to delegate this particular taxing power to any
other body. Only the people by constitutional amend-
ment can make this change if they deem it necessary.
It is not within the power of the courts to do so by
strained interpretations. Neither expediency, nor public
need, nor a small amount of tax, will justify a disregard
of the constitutional and legal rights of taxpayers to have
the laws fairly and properly applied as construed.

▮▮▮ Since the City has no power to levy the tax in
question, it follows that the Council has no authority to
call a special election of the City's electors to confer
such forbidden power upon it.

The judgment is affirmed.

MR. CHIEF JUSTICE HOLLAND not participating.