No. 28314

**Associated Dry Goods Corporation, d/b/a/ The Denver Dry Goods Company, a Virginia corporation v. City of Arvada, Colorado, a municipal corporation, Don M. Harwell, and S. W. Tanner**

(593 P.2d 1375)

Decided May 7, 1979.

Holland & Hart, Jay W. Tracey, Jr., Michael D. Martin, R. Alan Poe, for plaintiff-appellant.

Benjamin P. King, Jr., Deputy City Attorney, for defendants-appellees.

*En Banc.*

MR. JUSTICE ROVIRA delivered the opinion of the Court.

Associated Dry Goods Corporation, a Virginia corporation d/b/a The Denver Dry Goods Company (The Denver), sought review, pursuant to C.R.C.P. 106(a)(4), against the City of Arvada (City), a municipal corporation; Don M. Harwell, Hearing Officer; and S. W. Tanner, Treasurer, of an order of Harwell that The Denver was doing business in Arvada and requiring The Denver to obtain a use tax license from Arvada and collect use tax for the City.

The district court entered a judgment in favor of the defendants, and The Denver appealed to the Colorado Court of Appeals. The case was transferred to this court pursuant to section 13-4-110(3), C.R.S. 1973, because the constitutionality of the city ordinance was being challenged. We reverse.

The Denver is engaged in the business of selling merchandise at retail through several branch stores located in the Denver metropolitan area. None of these stores are located in the City of Arvada.

Through its various stores, the Denver sells merchandise to customers who reside in many parts of the state. These sales of merchandise take place at The Denver's stores, and the purchasers ordinarily take the merchandise with them when they leave the stores.

Some purchasers request that the merchandise that they have purchased be delivered to them at their residences. In such cases, The Denver delivers the merchandise to the purchaser through its own delivery trucks and employees or arranges to have the merchandise delivered by common carrier or through the United States Mail.

In 1977 The Denver was served with a notice from the defendant Harwell that a hearing had been scheduled for the purpose of determining whether the Denver was engaged in business within the City of Arvada pursuant to Arvada Use Tax Ordinance 1336, section 9-19(b)(3), Code of the City of Arvada[1] The Denver and the City entered into a stipulation of facts which provided as follows:

---

[1] Section 9-19

"b. For purposes of this section, a non-resident vendor engages in business in the City of Arvada when selling, leasing, delivering or conducting any activity in connection therewith in the City of Arvada for the use, storage, consumption or distribution within the City of Arvada. This term shall include, but not be limited to:

"(3) Delivery in the City of Arvada by a non-resident vendor or his agent, of goods purchased outside the City by a resident of the City of Arvada."

(1)    The Denver Dry Goods Company (The Denver) does not directly, indirectly or by a subsidiary maintain an office, sales room, warehouse or other place of business within the City of Arvada.

(2)    The Denver does not specifically solicit business from persons residing in the City of Arvada.

(3)    The Denver does sell merchandise to residents of Arvada at its stores outside of the City of Arvada.

(4)    The Denver does occasionally arrange for merchandise purchased outside of the City of Arvada to be delivered to purchasers in the City of Arvada either by parcel post or by common carrier.

(5)    The Denver has in the past delivered merchandise purchased outside the City of Arvada to purchasers in the City of Arvada through the use of its own delivery trucks and employees.

(6)    Specifically, on April 22, 1977, The Denver delivered merchandise purchased outside the City of Arvada to 6185 West 61st Avenue, Arvada, Colorado, through the use of its own delivery truck and employees.

Harwell entered an order which provided that in all cases in which The Denver delivered merchandise within the City of Arvada through the use of its own employees or vehicles, or where The Denver arranged delivery of merchandise through common carrier or United States Mail, the Denver was engaged in business within the City of Arvada pursuant to section 9-19 of the Code of the City of Arvada. The order required The Denver to either cease the activities which were found to constitute doing business or obtain a use tax license and begin collecting a use tax for the City.

The Denver appealed the order of the hearing officer to the trial court contending that the Arvada Use Tax Ordinance was unconstitutional as applied to its business operations.

The trial court entered its order on May 9, 1978, and concluded that where deliveries were made in Arvada by employees of The Denver that section 9-19(b)(3) of the City Code of Arvada was applicable. The trial court further held that, since The Denver had established itself as doing business in Arvada, all deliveries made by The Denver, whether by agent, parcel post, common carrier or by other means, are subject to the Arvada Use Tax.

## I.

The issue presented by the facts of this case is whether The Denver is subject to the Arvada Use Tax by reason of its delivery of goods, purchased outside the City by Arvada residents, to those residents within the City. Stated another way, may Arvada constitutionally impose a use tax collection liability on The Denver, under the facts as stipulated by the parties?

The Denver argues that section 9-19(b)(3), as applied, violates the due process clause of the Fourteenth Amendment to the United States Constitution, *U.S. Const.* amend. XIV, § 1, and *Colo. Const.* Art. II, Sec. 25.

■ An analysis of the cases which have considered whether a vendor, by its acts or course of dealing, has subjected itself to the taxing power of a jurisdiction leads to the conclusion that due process requires some link or nexus, some minimum connection between a taxing jurisdiction and the person or transaction it seeks to tax.

In *Miller Brothers Co. v. Maryland,* 347 U.S. 340, 74 S.Ct. 535, 98 L.Ed.744 (1954), Maryland attempted to require a merchant in Delaware to collect a Maryland use tax on sales to Maryland residents. The Delaware merchant delivered purchases by its own vehicles to Maryland locations and by common carrier delivery to Maryland addresses. The United States Supreme Court held that while the inhabitants of Maryland incurred a liability for the use tax when they used, stored or consumed the goods in Maryland, the burden of collecting or paying their tax could not be shifted to the Delaware merchant "in the absence of some jurisdictional basis not present here." 340 U.S. at 347.

The City concedes that with respect to interstate commerce, federal due process requires some minimum connection in order for a state to require a non-resident vendor to collect a use tax on sales to residents of that state. Further, it admits that, where the vendor's only contact with the state and its residents is through mail and common carrier, there is not sufficient nexus to require the vendor to collect a use tax.

The City's position is that any contact above and beyond mail and common carrier will establish the minimum connection or nexus to support taxation. *National Geographic Society v. California,* 430 U.S. 551, 97 S.Ct. 1386, 51 L.Ed.2d 631 (1977); *Scripto v. Carson,* 362 U.S. 207, 80 S.Ct. 619, 4 L.Ed.2d 660 (1960); *Standard Pressed Steel v. Department of Revenue of Washington,* 419 U.S. 560, 95 S.Ct. 706, 42 L.Ed.2d 719 (1975).

The cases relied upon by the City reflect that the vendor had greater contact with the taxing jurisdiction than is present here. In *National Geographic, supra,* the vendor maintained an office and employees in California to solicit advertising, and the court concluded that such activities provided sufficient nexus — as required by the due process

clause of the Fourteenth Amendment and the Commerce Clause — to support the imposition of a use tax collection liability.

In *Scripto v. Carson, supra,* the vendor had ten independent contractors (salesmen) soliciting in the state, and in *Standard Pressed Steel v. Department of Revenue of Washington, supra,* which involved a gross receipts tax, the vendor sent its engineer to live in the state of Washington to assist the purchaser in the use of its products and to maintain good will.

We believe, as did the *Millers Brothers* court, that "there is a wide gulf between this type of active and aggressive operation within a taxing state and the occasional delivery of goods sold at an out-of-state store with no solicitation other than the incidental effects of general advertising."

■ We do not agree that the use by The Denver of its vehicles and employees to deliver goods sold to Arvada residents establishes that it is doing business in Arvada and therefore is subject to the use tax ordinance of that city.[2]

Such a holding is in accord with this court's prior views concerning municipal taxation. In considering the "occupational tax" imposed by the City and County of Denver, we held it to be permissible when applied to persons working at business establishments within the city limits, *Denver v. Duffy Storage and Moving Company,* 168 Colo. 91, 450 P.2d 339 (1969), but unconstitutional when applied to persons who merely traveled in Denver but conducted their business at a federal enclave not within the jurisdiction of the municipality. *Johnson v. Denver,* 186 Colo. 398, 527 P.2d 883 (1974). The standard set forth in those cases is that the taxpayer must be engaged in a business having a fixed or transitory situs in the taxing jurisdiction. *Cf. Englewood v. Wright,* 147 Colo. 537, 364 P.2d 569 (1961).

A similar standard is utilized by the Supreme Court of California in addressing issues analogous to the one in the instant case. That court has repeatedly held that local taxes can be imposed on sales which culminate in delivery within the municipality only to the extent that selling activities occur within the city. Delivery alone is an insufficient nexus. *City of Los Angeles v. Belridge Oil Company,* 48 Cal.2d 320, 309 P.2d 417 (1957); *City of Los Angeles v. Shell Oil Company,* 4 Cal.3d 108, 480 P.2d 953 (1971).

## II.

In the alternative, the City argues that the due process analysis utilized by the United States Supreme Court in *Miller Brothers, supra,* is inapplicable to the inter-city delivery in this case. The basis for this

---

[2] Because delivery by employees is not a sufficient nexus on which to base this municipal tax, *a fortiori,* delivery by mail or by common carrier is not a sufficient connection. *National Bellas Hess v. Illinois,* 368 U.S. 753, 87 S.Ct. 1389, 18 L.Ed.2d 505 (1967).

contention is that both the city where The Denver is located and Arvada, where delivery occurred, are subdivisions of the state, which has intervened and defined the power to tax to include the tax imposed by Arvada in this case by the enactment and subsequent amendment of section 29-2-105(1)(b), C.R.S. 1973 (1977 Repl. Vol. 12).

Arvada relies principally upon the 1977 amendment to the statute, Colo. Sess. Laws 1977, ch. 389, 29-2-105 at 1398, for the proposition that the sale should be considered to have occurred at the place of delivery, therefore justifying Arvada's taxation of the transaction.

■ We note at the outset the long-standing rule of statutory construction in this state that taxing powers and taxing acts will not be extended beyond the clear import of the language used, nor will their operation be enlarged by analogy. *Bedford v. Johnson,* 102 Colo. 203, 78 P.2d 373 (1938); *Rocky Mountain Prestress, Inc. v. Johnson,* 194 Colo. 560, 574 P.2d 88 (1978). All doubts will be construed against the government and in favor of the taxpayer. *City of Denver v. Sweet,* 138 Colo. 41, 329 P.2d 441 (1958); *Rocky Mountain Prestress, Inc., supra.*

The Colorado constitution gives a home rule city the authority to impose an excise tax on the use, storage or consumption of tangible personal property as it deems appropriate, so long as it is a matter of purely local concern. *Colo. Const.* Art. XX, Sec. 6; *Berman v. City and County of Denver,* 156 Colo. 538, 400 P.2d 434 (1965).

By the enactment of article 2 of title 29, C.R.S. 1973, the legislature granted incorporated towns, cities, and counties the authority to impose a use tax, but only on "construction and building materials and motor and other vehicles on which registration is required." Section 29-2-109(1), C.R.S. 1973. Of course, a home rule city has all the powers granted by statute to incorporated municipalities unless expressly restricted by its charter. *Colo. Const.* Art. XX, Sec. 6. As such, if the merchandise delivered by The Denver was within the scope of section 29-2-109, C.R.S. 1973, the City could invoke the provisions of section 29-2-105, C.R.S. 1973, to attempt to circumvent the due process analysis of *Miller Brothers, supra.*[3]

However, section 29-2-109, C.R.S. 1973, does not address the imposition of a use tax on the merchandise which was sold by The Denver.

Because article 2 of title 29, C.R.S. 1973, does not expand the power of the City of Arvada to impose a use tax under the facts of this case, the City has not successfully invoked any provision thereof to circumvent the due process principles of *Miller Brothers, supra.* The constitutional anal-

---

[3] This is not to say that section 29-2-105, C.R.S. 1973, would allow the imposition of the use tax if the property subject to taxation were either building material or a motor vehicle. We do not reach the merits of the City's statutory analysis of section 29-2-105, C.R.S. 1973, because the applicability of that section is precluded in this case by section 29-2-109, C.R.S. 1973.

ysis utilized there resolves the intercity tax scheme in this case just as it governed the interstate tax policies in that case. As explained above, delivery alone is an insufficient nexus for the inclusion of The Denver in the municipal use tax scheme of the City of Arvada.

The judgment of the district court is therefore reversed.

MR. JUSTICE CARRIGAN does not participate.