**TRANSPONDER CORPORATION OF DENVER, INC., Plaintiff-Appellee,**

v.

**PROPERTY TAX ADMINISTRATOR of the State of Colorado, Division of Property Taxation of the State of Colorado, Board of Assessment Appeals of the State of Colorado, and Board of County Commissioners of the County of Jefferson, Defendants-Appellants.**

No. 82SA223.

Supreme Court of Colorado, En Banc.

April 23, 1984.

10. Neither of these arguments was presented to the trial court.

Holland & Hart, Robert Alan Poe, David G. Palmer, James J. Dufficy, Denver, for plaintiff-appellee.

J.D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., Billy Shuman, Asst. Atty. Gen., Denver, Patrick R. Mahan, County Atty., Richard F. Mutzebaugh, George D. Theophilos, Asst. County Attys., Golden, for defendants-appellants.

ROVIRA, Justice.

The Property Tax Administrator of the State of Colorado (State) appeals [1] from an order of the district court reversing the Board of Assessment Appeals (BAA) and holding that Transponder Corporation of Denver, Inc. (Transponder) should not be taxed as a public utility for tax year 1980. We affirm.

I.

Transponder was organized in 1978 for the purpose of constructing and operating an earth station in Jefferson County. An earth station is composed of transmitters, receivers, antennae, and associated equipment necessary to relay electronic signals to and from communications satellites located in outer space. Pursuant to the Communications Act of 1934, 47 U.S.C. § 203 (1976), Transponder applied for and received permits from the Federal Communications Commission (FCC) for authority to construct and to operate an earth station under the classification of Domestic Satellite Service. Transponder filed with the FCC a tariff that authorized it to provide voice-data and wide-band data circuits, and television reception and transmission channels.

The Property Tax Administrator determined that Transponder should be taxed as a public utility [2] for tax year 1980. Transponder appealed to the BAA and an evidentiary hearing was held.

Evidence before the BAA established that Transponder provides a portion of a private communications channel that allows a customer to send electronic signals from the customer's Denver-area office to other offices of the customer located in seven cities across the United States.[3] A local channel obtained by the customer from Mountain Bell carries the signal from the customer's Denver-area office to Transponder's earth station. Transponder relays the signal to a satellite owned and operated by RCA American Communications, Inc., which transmits the signal to other earth stations. From there, the signal is delivered to the customer's offices in that city by channels obtained from the local telephone company. The same process operates in reverse when the customer's office in another city wishes to communicate with its Denver-area office.

One of Transponder's witnesses testified that it has the capability to provide two way voice communication service, as well as data and video services. Based on that capability and Transponder's advertising for customers, the BAA, in its conclusory "Findings and Order," found that Transponder met the definition of a public utility as set forth in Colo.Sess.Laws 1976, ch. 154, § 39-4-101(3) at 759.[4] This statute lists eleven types of companies which are public utilities for property taxation purposes, unless the context of a particular provision requires otherwise. The reported discussion among the BAA's members, which occurred prior to their decision, indicates that the BAA considered Transpon-

---

1. This case was transferred from the court of appeals pursuant to section 13-4-109, C.R.S. 1973.

2. Public utility and telephone company status creates unfavorable tax ramifications for Transponder, including the loss of 1973 base year treatment for tax year 1980. In general, for tax year 1980 the Property Tax Administrator determines the value of real property by using 1973 manuals and associated data. Section 39-1-104(9)(a), C.R.S.1973 (1982 Repl.Vol. 16B). But the value of telephone companies' real property is determined "as of the last day of December of each year." Section 39-4-106(3)(a), C.R.S.1973 (1982 Repl.Vol. 16B); *see* section 39-1-104(12)(c), C.R.S.1973 (1982 Repl.Vol. 16B).

3. The other earth stations were located in or near Camden, New Jersey; New York, New York; Atlanta, Georgia; San Francisco, California; Los Angeles, California; Chicago, Illinois; and Houston, Texas. Transponder did not own any of these other earth stations: the Jefferson County earth station was its only tangible property in 1980.

4. This statute is discussed in section III, *infra*. The correlative current statutes, section 39-4-101(2.5) and (3), C.R.S.1973 (1982 Repl.Vol. 16B), do not apply to tax year 1980.

der to be a "telephone company" within the meaning of this statute.

On appeal, the district court examined the record of the proceedings before the BAA and made several conclusions as matters of law. The district court held that whether Transponder is a telephone company within the meaning of the applicable statute is a question of law. Therefore, the BAA's decision on this issue does not bind the courts. As to the substantive issue, the court concluded that Transponder was not a telephone company within the meaning of the applicable statute. Neither the legislature nor administrative regulations have defined the statute's terms. The ordinary understanding of the term "telephone company" does not include Transponder. In addition, the court noted that the statute as originally enacted contained the term "pipeline company," but did not contain the words "coal slurry pipeline." In 1976, the legislature added "coal slurry pipeline company" so that there would be no question whether coal slurry pipeline companies were taxable as public utilities. Similarly, if the term "telephone company" is to include a communications company like Transponder, then the legislature, and not the courts, must make that determination. Moreover, the court relied on the general rule of law that in taxation matters, ambiguities must be construed in favor of the taxpayer. The court then ordered the BAA to tax the property of Transponder not as a public utility, but as otherwise provided by law.

## II.

■ The State argues that the district court erroneously substituted its findings for the BAA's on the issues of whether Transponder provided equipment to its customers and whether Transponder was a telephone company. We disagree.

The State posits that the BAA "apparently" found that Transponder provided equipment to its customers. Our review of the BAA's "Findings and Order" reveals no such finding. The BAA did not explicitly address this issue, and no such finding is implied by the BAA's decision. The State offers no authority or arguments supporting the view that such a finding should be implied here, and we see no reason to make this implication.

■ The district court properly considered evidence other than that referred to in the specific findings made by the BAA. Determinations of the BAA are subject to judicial review under the State Administrative Procedure Act, sections 24–4–101 to –108, C.R.S.1973 (1982 Repl.Vol. 10 and 1983 Supp.). *See Warren Village, Inc. v. Board of Assessment Appeals*, 619 P.2d 60 (Colo.1980). Under that Act, "the record on review" of an agency's decision "shall include ... all ... evidence ... presented to or considered by the agency ...." Section 24–4–106(6), C.R.S.1973 (1982 Repl.Vol. 10).

■ The evidence supports the district court's determination. Although Transponder's tariff states that it may provide equipment to its customers, no evidence was introduced showing that Transponder provided such equipment during the tax year in question. Evidence presented to the BAA included an affidavit of Transponder's Vice President, David Corbin, stating that Transponder did not supply any equipment to its customers. This evidence was uncontradicted. The State argues that its Exhibit 1, a Transponder advertising brochure which refers to Transponder's available circuits, provides contrary evidence. But viewed in context, "circuits" refers to the relay process, and not to equipment which would be provided to customers.[5]

---

**5.** The advertising brochure states in pertinent part:
"Voice Channels
"Voice channels for point-to-point or company internal switch systems are offered between Denver and the major cities in the continental United States. Your offices and

plants can now communicate between these cities more effectively *and at lower cost.* Voice and data can be transmitted over these channels.
"Data Communication
"TCD [Transponder Corporation of Denver] circuits are available for digital and analog

Under these circumstances, particularly in the absence of a contrary finding by the BAA, the district court's decision was not erroneous.

■ We also find no merit in the State's contention that the district court erroneously substituted its judgment for the BAA's on the question of whether Transponder was a "telephone company" within the meaning of Colo.Sess.Laws 1976, ch. 154, § 39–4–101(3) at 759. In reviewing an agency's actions, "the court shall determine all questions of law and interpret the statutory ... provisions involved and shall apply such interpretation to the facts duly found or established." Section 24–4–106(7), C.R.S.1973 (1982 Repl.Vol. 10). Here, whether Transponder is a "telephone company" within the meaning of the applicable statute is a question of law to be determined on the basis of the operative facts. As such, it is a question of statutory interpretation, and the court is not bound by the agency's determination. *Brush Hay and Milling Company v. Small*, 154 Colo. 11, 388 P.2d 84 (1964); *Gardiner v. Arizona Department of Economic Security*, 127 Ariz. 603, 623 P.2d 33 (1981); *Minnesota Microwave, Inc. v. Public Service Commission*, 291 Minn. 241, 190 N.W.2d 661 (1971) (the question of whether a company was providing "telephone service" within the meaning of a statute was a question of law).

### III.

The substantive issue in this case, the question of whether the words "telephone company" as used in the public utility tax statute can encompass the type of service provided by Transponder, is one of first impression in this state.

■ Colo.Sess.Laws 1976, ch. 154, § 39–4–101(3) at 759 defines "public utility" as used in the article on valuation for public utility tax assessment as "every ... corporation ... which does business in this state as a ... telephone company ...."[6] No definition of the term "telephone company" is provided in this article. We must assume, therefore, that the legislature intended to give the term its usual and ordinary meaning. *Cohen v. State*, 197 Colo. 385, 593 P.2d 957 (1979).

We have considered a variety of sources in determining the usual and ordinary meaning of the term "telephone company." Uncontroverted testimony before the BAA, Colorado case law, and a Federal Communications Commission regulation support the view that an essential attribute of a telephone company is providing a communication service through which customers can communicate with other unrelated persons. During his testimony before the BAA, Howard R. Hawkins, who has had extensive experience in the telecommunications field,[7] was asked to describe the indicators of a telephone company. Hawkins testified that telephone companies have "... switching equipment that can be used to switch calls *from one customer to another ...*" (emphasis added). This testimony was uncontroverted. In addition, *City of Englewood v. Mountain States Telephone & Telegraph Company*, 163 Colo. 400, 406, 431 P.2d 40, 43 (1967), supports the view that telephone companies traditionally provide a communication service which allows customers to contact other customers who may be at many different locations. *See also Federal Communications Commission* Rules & Regulations, part 68 (October 1982) (part 68 addresses connection of equipment to telephone company lines, and

---

transmission from 300 baud to megabit data rates. These circuits can be for dedicated direct terminal or computer data transmission or in alternative voice/data networks."

**6.** The statute lists eleven types of companies which are "public utilities" for taxation purposes. In addition to telephone companies, they are: railroad, airline, rural electric, telegraph, gas, gas pipeline, carrier, domestic water, pipeline, and private car line companies. *Id.*

**7.** At the time of the BAA hearing, Hawkins was Chairman and Chief Executive officer of American Transcommunications, Inc., a former executive vice-president of RCA Corporation, and a *former* president of RCA's communications businesses.

strives to protect the "telephone network").[8] In contrast, the testimony before the BAA established that Transponder's sole function is to transmit and receive electrical impulses between the RCA satellite and its earth station, thereby providing a private link between a customer's office in one location and the same customer's office in another location. Persons who are not part of the customer's organization cannot use Transponder's services to contact that customer. The kind of intercustomer communication service usually and ordinarily provided by telephone companies is not provided by Transponder.

Thus, at least some doubt exists as to whether Transponder is a telephone company within the meaning of the statute in question. A "long-standing rule of statutory construction" in Colorado is that tax statutes "will not be extended beyond the clear import of the language used, nor will their operation be extended by analogy .... All doubts will be construed against the government and in favor of the taxpayer." *Associated Dry Goods v. City of Arvada,* 197 Colo. 491, 496, 593 P.2d 1375, 1378 (1979); *see City & County of Denver v. Sweet,* 138 Colo. 41, 329 P.2d 441 (1958). Here, the taxpayer, Transponder, is urging that it was not a "telephone company" within the meaning of the statute in question for tax year 1980. Therefore, the doubt is resolved in its favor.

The judgment of the district court is affirmed.

---

8. An opinion from the Ohio Public Utilities Commission also supports the view that telephone companies provide this type of communication network. *General Telephone Co. of Ohio v. The Ohio Bell Telephone Co.,* 39 P.U.R.3d 65, 68 (Ohio P.U.C.1961), states that "telephone companies render substantially two basic services, local or 'exchange' service and toll service...." A subsequent portion of the opinion defines "Local Service Area" as "[t]he area throughout which all exchange subscribers, at flat monthly rates, may interchange telephone messages, without the application of or payment of individual message charges." *Id.* at 93.