ASARCO, INC., Petitioner–Appellant,

v.

**BOARD OF COUNTY COMMISSIONERS OF LAKE COUNTY, State of Colorado, Respondent–Appellee,**

and

**Board of Assessment Appeals of the State of Colorado, Appellee.**

Nos. 94CA0081, 94CA0082.

Colorado Court of Appeals, Div. IV.

July 13, 1995.

Rehearing Denied Aug. 17, 1995.

Certiorari Denied April 29, 1996.

**552**

Bradley, Campbell, Carney & Madsen, P.C., Victor F. Boog, Golden, for petitioner-appellant.

Dunn, Abplanalp & Christensen, P.C., John W. Dunn, Vail, for respondent-appellee Bd. of County Com'rs of Lake County.

Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Larry A. Williams, First Asst. Atty. Gen., Mark W. Gerganoff, Asst. Atty. Gen., Denver, for appellee Bd. of Assessment Appeals.

Opinion by Judge KAPELKE.

In this property tax case, petitioner, ASARCO, Inc. (Taxpayer), appeals from the order of appellee, the Board of Assessment Appeals (BAA), concerning Taxpayer's abatement petition for tax year 1992. We affirm.

This appeal involves a water treatment facility that Taxpayer built pursuant to a directive issued by the United States Environmental Protection Agency (EPA).

In a "best information available" valuation, the county assessor originally assessed the property for tax year 1992 based on a valuation of $10,465,275. That valuation separately assessed the real property at $7,787,929, and the personal property on the facility at $2,677,346. Taxpayer filed a protest challenging the valuation, but the assessor did not act on the protest.

Taxpayer thereafter filed an abatement petition, contending that the property had been overvalued. Taxpayer claimed that under either the market or income approach to valuation, the real property had no value and that under the cost approach the real property should be valued at $823,930. Taxpayer maintained that the personal property had a value of $2,431,752. Based in part on original cost information provided by Taxpayer, the assessor reduced the total valuation of the facility to $7,436,070. In the revised valuation, the assessor valued the real property at $5,217,531 and the personal property at $2,218,539.

On review, the Board of County Commissioners (BOCC) affirmed the assessor's valuation of the personal property, but reduced the valuation of the real property to $3,911,197.

Still dissatisfied with the value assigned to the facility, Taxpayer appealed the BOCC's determination to the BAA. Following an evidentiary hearing, the BAA upheld the personal property assessment and reduced the real property valuation to $2,251,708. Taxpayer now appeals from that determination.

I.

Taxpayer's first contention is that the facility should be exempt from taxation because the EPA required Taxpayer to build the facility, and the facility not only produces no income and is not marketable, but even costs ASARCO approximately $500,000 per year to operate. Whether the facility should be partially or totally exempt from taxation, however, is for the General Assembly to de-

cide. As Taxpayer acknowledges, the facility is not among the types of property the General Assembly has exempted from taxation. *See* § 39–3–101, et seq., C.R.S. (1994 Repl. Vol. 16B). Hence, there is no basis for finding the property totally exempt from taxation.

## II.

Taxpayer next contends that the assessment is erroneous because it is based entirely on the cost approach to valuation. Taxpayer also contends that the assessor erroneously based the valuation on reproduction costs, not replacement costs. We disagree with both contentions.

■ The evaluation of the credibility of the witnesses and of the weight, probative value, and sufficiency of the evidence is solely within the fact-finding province of the BAA. *See Gyurman v. Weld County Board of Equalization,* 851 P.2d 307 (Colo.App.1993); *Board of Assessment Appeals v. Colorado Arlberg Club,* 762 P.2d 146 (Colo.1988). The BAA, as the finder of fact, is not bound to accept as dispositive even the uncontroverted evidence of a single party and may properly consider any reasonable inferences and circumstances tending to weaken or discredit such evidence. *See Snyder Family Trust v. Adams County Board of Equalization,* 835 P.2d 579 (Colo.App.1992); *Walton v. Banking Board,* 36 Colo.App. 311, 541 P.2d 1254 (1975).

■ On review, we may not reweigh the evidence or substitute our judgment for that of the BAA, and we may not set aside the BAA's determination unless it is unsupported by any competent evidence or reflects a failure to abide by the statutory scheme for calculating property tax assessments. *Board of Assessment Appeals v. E.E. Sonnenberg & Sons, Inc.,* 797 P.2d 27 (Colo.1990); §§ 24–4–106(7) & 24–4–106(11)(e), C.R.S. (1988 Repl. Vol. 10A). Thus, provided the assessor complied with the statutory scheme, we may not reverse the BAA's decision if it is supported by competent evidence, even if the record reveals that Taxpayer presented evidence contrary to the BAA's findings. *See Maurer v. Young Life,* 779 P.2d 1317 (Colo.1989).

## A.

We first address, and reject, Taxpayer's contention that the assessment is erroneous because it is based on the cost approach to valuation.

■ In valuing property for tax purposes, the assessor must give "appropriate consideration" to the income, market, and cost approaches to valuation. Section 39–1–103(5)(a), C.R.S. (1994 Repl.Vol. 16B); *see also* Colo. Const. art. X, § 3(1)(a). The requirement that a property assessor give "appropriate consideration" to each of the three methods of valuation does not require complete and documented calculations of each approach or an explanation of the reasons for excluding those not used. *Montrose Properties, Ltd. v. Board of Assessment Appeals,* 738 P.2d 396 (Colo.App.1987).

■ The nature of the property to be assessed may rule out consideration of one or more of the approaches to valuation, or there may be insufficient data to allow use of all of the approaches. *501 South Cherry Joint Venture v. Arapahoe County Board of Equalization,* 817 P.2d 583 (Colo.App.1991). Thus, one or more of the three approaches may not be applicable in a particular case. *Board of Assessment Appeals v. E.E. Sonnenberg & Sons, Inc., supra.*

■ Thus, if the market and income approaches to valuation are inapplicable or do not produce a meaningful valuation for assessment purposes, it is appropriate for the assessor to use only the cost approach. *Montrose Properties, Ltd. v. Board of Assessment Appeals, supra.*

■ Here, Taxpayer's expert and the county assessor both testified that they considered the income and market approaches to valuation but that, because the water treatment facility is not marketable and does not produce income, they relied on the cost approach in valuing the property for the 1992 tax year. In his report, Taxpayer's expert specifically concluded that the income and market approaches to valuation were "not applicable" and that the cost approach was

the only appropriate method for valuing the property.

Under these circumstances, we conclude that the BAA did not err in determining that the cost approach to valuation was the most appropriate. *See Board of Assessment Appeals v. E.E. Sonnenberg & Sons, Inc., supra; Montrose Properties, Ltd. v. Board of Assessment Appeals, supra; see also Leavell–Rio Grande Central Associates v. Board of Assessment Appeals,* 753 P.2d 797 (Colo. App.1988) (taxpayers' stipulation to suitability of income approach for determining actual value of rental properties precluded taxpayers from disputing assessor's utilization of such method on appeal).

### B.

We also reject Taxpayer's contention that the assessor erroneously based the valuation on reproduction costs, rather than replacement costs.

The American Institute of Real Estate Appraisers (the Institute) describes the cost approach to valuation as follows:

> The cost approach is based on the premise that the value of a property can be derived by adding the estimated value of the land to the current cost of constructing a *reproduction or replacement* for the improvements and then subtracting the amount of depreciation ... in the structures from all causes. (emphasis added)

American Institute of Real Estate Appraisers, *The Appraisal of Real Estate* 71 (9th ed. 1987). The "theoretical base for the cost approach is reproduction cost, but replacement cost may also be used." *The Appraisal of Real Estate, supra,* at 351.

The Institute explains the difference between the reproduction cost approach and the replacement cost approach as follows:

> Reproduction cost is the estimated cost to construct, at current prices, an exact duplicate or replica of the building being appraised, using the same materials, construction standards, design, layout, and quality of workmanship, and embodying all the deficiencies, superadequacies, and obsolescence of the subject building. Replacement cost is the estimated cost to construct, at current prices, a building with utility equivalent to the building being appraised, using modern materials and current standards, design, and layout.

*The Appraisal of Real Estate, supra,* at 351–52.; *see also* Colorado Division of Real Estate, *Colorado Real Estate Manual* at 10–41 through 10–42 and 10–62 (1994).

Here, the assessor indicated that the water treatment facility was a "special purpose" structure that was designed and constructed in accordance with EPA specifications. The assessor also testified that the property was designed to withstand extreme flood, lightning, earthquake, and fire conditions.

■■■ In light of the special purpose of the facility and the requirement that the facility be constructed in accordance with EPA specifications, it was not unreasonable for the BAA to conclude that an assessment based on replacement cost, or the cost of replacing the facility with a building having a use equivalent to that of the facility, would not accurately reflect its value. Under these circumstances, we conclude that there is competent and substantial evidence in the record to support the BAA's determination that the assessor appropriately valued the water treatment facility based on reproduction cost, that is, the cost of constructing a duplicate of the facility using the same materials, construction standards, and design requirements. Accordingly, the BAA's ruling may not be disturbed on appeal. *See Golden Gate Development Co. v. Gilpin County Board of Equalization,* 856 P.2d 72 (Colo. App.1993).

Moreover, there is no evidence in the record to substantiate any assertion that the assessment was erroneous because the original cost of constructing the facility would have exceeded the current cost of building a duplicate of the facility.

We also reject Taxpayer's related contention that the assessment was erroneous because the assessor did not refer to the Marshall & Swift Manual in valuing the water treatment facility.

■■■ Assessors are permitted, but not required, to refer to this Manual when as-

sessing property under the *replacement* cost approach to valuation. 2 Administrative and Assessment Procedures Manual, *supra*, § 2 at 2.2 (1992). Here, because the assessor used the *reproduction* cost approach, the Marshall & Swift Manual would not have been useful, and the assessor's failure to refer to it did not undermine the validity of the valuation.

### III.

Taxpayer next contends that the assessment is erroneous because it assigns a separate value to utilities rather than including the value of the utilities as part of the land valuation. More specifically, Taxpayer argues that, because the Administrative and Assessment Procedures Manual suggests that utilities may be included in a valuation of land, and because the assessor testified that he knew of no other property in the county for which the land and utilities were separately assessed, the assessor was required to include the valuation of the utilities in the land valuation. We disagree.

■ Utilities add value to property, and it is appropriate to include their value in the overall property assessment. *See The Appraisal of Real Estate, supra*, at 201–02.

■ Here, Taxpayer does not dispute that the utilities enhance the value of the property. Moreover, while Taxpayer complains that the utilities were separately valued, it does not contend that the utilities were valued twice. Nor did Taxpayer demonstrate that if the assessor had included the utilities in the land valuation rather than valuing the utilities and land separately, the overall valuation would have been different. Accordingly, we cannot conclude that the assessment was erroneous in this regard.

### IV.

Taxpayer's final contention is that there was insufficient evidence in the record to support the BAA's determination that the assessor properly valued as "site improvements" an excavation, a dirt road, and a surge pond. Again, we perceive no reversible error.

■ Improvements are defined as "all structures, buildings, fixtures, fences, and water rights erected upon or affixed to land." Section 39–1–102(7), C.R.S. (1994 Repl.Vol. 16B).

While the excavation, dirt road, and surge pond do not fall within the statutory definition of "site improvements," there is competent evidence in the record that they do have value, and Taxpayer failed to present evidence that they were overvalued.

Thus, like the utilities, these items were not valued twice and could properly have been considered in determining the overall value of the property, even though the assessor erroneously classified them separately as "site improvements." Taxpayer did not demonstrate that the overall valuation would have been lower had the excavation, dirt road, and surge pond not been valued separately. We therefore conclude that the BAA did not err in including them in the valuation of the property.

The order is affirmed.

MARQUEZ and DAVIDSON, JJ., concur.