**OPEX COMMUNICATIONS, INC.,**
Petitioner–Appellant,

v.

**PROPERTY TAX ADMINISTRATOR,**
Respondent–Appellee,

and

**Colorado State Board of Assessment Appeals, Appellee.**

No. 05CA1774.

Colorado Court of Appeals,
Div. V.

May 17, 2007.

Robinson Waters & O'Dorisio, P.C., Richard D. Judd, Kimberly A. Bruetsch, Denver, Colorado, for Petitioner–Appellant.

John W. Suthers, Attorney General, Robert H. Dodd, Jr., Assistant Attorney General, Denver, Colorado, for Respondent–Appellee.

John W. Suthers, Attorney General, Lisa Brenner Freimann, Assistant Attorney General, Denver, Colorado, for Appellee.

Opinion by Judge J. JONES.

Petitioner, OPEX Communications, Inc. (OPEX), appeals the order of respondent, Colorado State Board of Assessment Appeals (BAA), (1) affirming the determination of the Property Tax Administrator (PTA) that OPEX is a telephone company subject to property tax assessment as a public utility under § 39–4–102(1), C.R.S.2006; and (2) valuing OPEX's Colorado property for 2004. We affirm.

## I. Background

OPEX is a nonfacilities-based reseller of long distance telephone services. It does not own, operate, or maintain any telephone network or switching equipment. OPEX has contracts in Colorado with two nationwide network providers, Qwest Communications and Global Crossing, to provide toll access, but such contracts do not provide for the leasing or management of equipment or for the bulk purchase of services. Although OPEX does not own or control any tangible or real property within Colorado, over 4,000

Colorado residential and business customers rely on OPEX for long distance services.

OPEX's customers complete order forms to obtain its services. OPEX reports these orders to either Qwest or Global Crossing. When an OPEX customer makes a call, the local carrier connects with either Qwest or Global Crossing for interstate transmission, and, upon reaching the state where the recipient is located, the call is then switched to the final local carrier. Qwest and Global Crossing report the minutes used to OPEX on a daily basis. OPEX bills its customers on a monthly basis either for minutes used or, if a specified number of minutes are not used, for a minimum service fee. In addition to billing and collection, OPEX is responsible for customer service, and its customers report service problems directly to OPEX.

The PTA assessed property taxes against OPEX as a public utility for tax years 2003 and 2004 under § 39–4–102(1), valuing OPEX's Colorado property (primarily its customer contracts) at $573,800 for 2003 and $1,299,000 for 2004. OPEX objected to the assessments by filing a petition with the BAA, contending that it is not a public utility for purposes of assessing property tax and challenging the valuation reached by the assessor.

Following a hearing, the BAA issued an order finding that OPEX is a telephone company, and therefore a public utility, for purposes of assessing property tax under § 39–4–102(1). The BAA also determined that the valuation for 2003 was correct, but reduced the valuation for 2004 from $1,299,000 to $607,168.

This appeal followed.

## II. OPEX is a "Telephone Company"

OPEX first contends that the BAA erred when it found that OPEX is a public utility for purposes of assessing property tax under § 39–4–102(1). According to OPEX, it is not a telephone company because it does not lease or own any equipment, lines, or switching facilities, and therefore does not directly facilitate two-way communication between unrelated parties. We are not persuaded.

Article 4 of title 39 of the Colorado Revised Statutes governs the valuation of "public utilities" for tax assessment purposes. *See* § 39–4–102. "Public utility" is defined, as relevant here, as "every ... company, or corporation ... that does business in this state as a ... telephone company ...." Section 39–4–101(3)(a), C.R.S.2006.

Whether OPEX is a "telephone company" within the meaning of § 39–4–101(3)(a) requires an interpretation of that term. Thus, we review the BAA's conclusion that OPEX is a telephone company de novo. *See Transponder Corp. of Denver, Inc. v. Property Tax Adm'r,* 681 P.2d 499, 503 (Colo.1984).

The term "telephone company" is not defined in article 4 of title 39 or elsewhere as pertaining to tax assessments. "We must assume, therefore, that the legislature intended to give the term its usual and ordinary meaning." *United States Transmission Systems, Inc. v. Board of Assessment Appeals,* 715 P.2d 1249, 1253 (Colo. 1986); *see also Transponder Corp., supra,* 681 P.2d at 503. In determining that meaning, we must remain cognizant that tax statutes " 'will not be extended beyond the clear import of the language used, nor will their operation be extended by analogy,' " and that " '[a]ll doubts will be construed against the government and in favor of the taxpayer.' " *Transponder Corp., supra,* 681 P.2d at 504 (quoting *Associated Dry Goods Corp. v. City of Arvada,* 197 Colo. 491, 496, 593 P.2d 1375, 1378 (1979)).

A corporation operates as a telephone company "if the company directly facilitates two-way communication between a significant number of unrelated persons or businesses." *United States Transmission Systems, supra,* 715 P.2d at 1254. Accordingly, essential attributes of a telephone company include "providing a communication service through which customers can communicate with other unrelated persons" and allowing "customers to contact other customers who may be at many different locations." *Transponder Corp., supra,* 681 P.2d at 503 (corporation was not a telephone company where it only provided a "private link between a customer's office in one location and the same customer's office in another loca-

tion" that could not be used by persons who were not part of the customer's organization).

In *United States Transmission Systems, supra,* the court held that a company that provided its customers with long distance telephone service through the use of long distance lines or circuits it leased from "traditional" telephone companies was a telephone company for property tax assessment purposes. Unlike OPEX here, the company used switching equipment that it owned (though not in Colorado) to route calls, and owned long distance facilities in other states. We do not believe this distinction is dispositive of the question before us, however.

■ The question whether a nonfacilities-based reseller of long distance telephone services is a telephone company is an issue of first impression in Colorado. We find cases in other jurisdictions that have concluded that nonfacilities-based resellers are telephone companies to be persuasive. *See Alabama State Dep't of Revenue v. Telamarketing Communications of Montgomery,* 514 So.2d 1388, 1390 (Ala.Civ.App.1987); *In re United Teleservices, Inc.,* 267 Kan. 570, 983 P.2d 250, 257 (1999).

In *Telamarketing Communications,* the Alabama Court of Civil Appeals, relying heavily on our supreme court's decisions in *United States Transmission Systems* and *Transponder Corp.,* reasoned that "the term 'telephone business' or the accompanying term 'telephone company' must focus upon the ability of a company, or other entity, to place persons in different locations in communication with each other by the use of telephones." *Telamarketing Communications, supra,* 514 So.2d at 1390. The court concluded that nonfacilities-based resellers provide "long distance communication between persons, just as the traditional telephone companies" do, compete with those companies for customers, and hence are telephone companies. *Telamarketing Communications, supra,* 514 So.2d at 1390–91.

In *United Teleservices,* the Kansas Supreme Court explicitly rejected the argument that ownership of transmission or telephonic equipment is a criterion in determining whether a company is one in the business of transmitting telephone messages. *See United Teleservices, supra,* 983 P.2d at 252, 257–58. The court reasoned that the statute at issue did not define a public utility in terms of its ownership of or control over equipment, and that a nonfacilities-based reseller "operates a business of transmitting telephonic messages by contracting [with nationwide networks] for the service." *United Teleservices, supra,* 983 P.2d at 257–58.

Here, OPEX contracts for the use of long distance telephone transmission services, resells those services directly to the public, bills its customers for those services, competes with traditional telephone companies for long distance customers, and directly handles its customers' service problems. We therefore conclude that OPEX directly facilitates two-way communication between a significant number of unrelated persons or businesses, and therefore is a telephone company within the meaning of § 39–4–101(3)(a). The fact that OPEX does not lease or own any equipment, lines, or switching facilities does not dictate a contrary result because the statute imposes no such requirement on its face, and the ordinary, plain meaning of "telephone company," as determined by our supreme court, is broad enough to include OPEX's activities notwithstanding its lack of ownership of or control over such "hardware."

OPEX's reliance on *Fast Phones, Inc. v. City of Montgomery,* 842 So.2d 617 (Ala. 2002), is misplaced. The court in *Fast Phones* considered whether a reseller was a "telephone exchange" within the meaning of a licensing fee statute, not whether it was a "telephone company." Indeed, the court recognized that "[b]eing in the 'telephone business' and operating a 'telephone exchange' are distinctly different," and that the Alabama Court of Civil Appeals' decision in *Telamarketing Communications, supra,* "recognizes 'business and economic reality' when it treats resellers of telephone services as engaging in the 'telephone business.'" *Fast Phones, supra,* 842 So.2d at 621.

■ OPEX's contention that we should look to statutes governing the regulation of public utilities, including the statutes defining

and requiring registration of a "toll reseller," §§ 40–15–102(30), 40–15–302.5, C.R.S.2006, to define "public utility" for tax assessment purposes is likewise unpersuasive. We do not look to those statutes to define "public utility" for tax assessment purposes because "whether a particular company is a public utility for the purpose of rate and service regulation by the [PUC] is a distinct and separate question from whether that company is a public utility for purposes of property taxation." *United States Transmission Systems, supra,* 715 P.2d at 1254. The definition of public utility for each purpose is "entirely different." *United States Transmission Systems, supra,* 715 P.2d at 1255. Further, as noted, our supreme court has articulated a definition of "telephone company" for purposes of § 39–4–101(3)(a) that accords with the ordinary meaning of that term, and we are bound by that definition.

In sum, we conclude that OPEX is a telephone company within the meaning of § 39–4–101(3)(a). Hence, it is subject to property tax assessment.

### III. The 2004 Valuation is Supported by Competent Evidence

OPEX next contends that the BAA erred in its determination of the value of OPEX's Colorado property for 2004. We disagree.

We will not disturb a factual determination made by the BAA unless it is unsupported by competent evidence in the record, considered as a whole, or reflects a failure to abide by the statutory scheme for calculating property tax assessments. *See* § 24–4–106(7), C.R.S. 2006; *Board of Assessment Appeals v. E.E. Sonnenberg & Sons, Inc.,* 797 P.2d 27, 34 (Colo.1990); *ASARCO, Inc. v. Board of County Comm'rs,* 916 P.2d 550, 553 (Colo. App.1995).

 "[W]e may not reweigh the evidence or substitute our judgment for that of the BAA...." *ASARCO, supra,* 916 P.2d at 553; *see also E.E. Sonnenberg, supra,* 797 P.2d at 34. "The evaluation of the credibility of the witnesses and of the weight, probative value, and sufficiency of the evidence is solely within the fact-finding province of the BAA." *ASARCO, supra,* 916 P.2d at 553. "The

BAA, as the finder of fact, is not bound to accept as dispositive even the uncontroverted evidence of a single party and may properly consider any reasonable inferences and circumstances tending to weaken or discredit such evidence." *ASARCO, supra,* 916 P.2d at 553.

Under § 39–4–102(1), C.R.S.2006, the PTA determines the actual value of a public utility as a unit by considering its tangible property, intangible property, gross and net operating revenues, and the average market value of its outstanding securities (if such market value is determinable). The PTA assigns "such weight to each of such factors as in the administrator's judgment will secure a just value of such public utility as a unit...." Section 39–4–102(1).

Upon determining the public utility's total value, the PTA "then determines what portion of the total value is represented by the public utility's property within the state [and] reduces that portion of the total value to assessment value." *United States Transmission Systems, supra,* 715 P.2d at 1252.

Here, the PTA assigned a value of $1,299,000 to OPEX's Colorado property for tax year 2004, based on a total value of approximately $55,000,000. The PTA's assessor testified that in valuing OPEX's property he considered the cost approach, the income approach, and the stock and debt approach, as set forth in the statute. He further testified that he used the income approach in valuing OPEX "because it directly measures both the value of the tangibles and the value of the intangible assets that are part of the business activities of OPEX."

 After receiving testimony from the assessor and an owner of OPEX, the BAA concluded that the value determined by the assessor for 2004 was "excessive given the decline in [OPEX's] revenue and customer count." The BAA, however, "was not convinced that the value of the subject property declined in value" to the extent OPEX claimed. The BAA determined that the value of OPEX's property in 2004 was equal to the value of that property in 2003, $25,923,000. The BAA then applied a Colorado allocation factor (to determine the number of BAA's customers who reside in Colorado) of 2.39% (slightly higher than the

allocation factor used for 2003 because a slightly higher percentage of OPEX's customers were in Colorado) and an equalization factor (to adjust that year's actual value to the level of value for a statutorily mandated previous year, *see* § 39–4–102(3)(b), C.R.S.2006) of 98% to arrive at a value of OPEX's Colorado property of $607,168 for 2004.

OPEX concedes that the income approach used by the PTA and the BAA is an appropriate method by which to assign actual value, but contends that the BAA should have given more weight to the testimony from the owner of OPEX as to its value. The BAA's order indicates that the BAA considered the owner's testimony, but rejected it in part when it concluded that it "was not convinced that the value of the subject property declined in value to the $18,000,000.00 presented by [OPEX]." The evaluation of the credibility of the owner's testimony and the weight it should be given is solely within the fact-finding province of the BAA. *See ASARCO, supra,* 916 P.2d at 553.

After reviewing the entire record, we conclude that the BAA's determination is supported by competent evidence in the record.

The assessor used a three-year weighted average of OPEX's income in valuing its property in 2003 and 2004. For 2003, however, the assessor discounted the three-year average substantially (38.5%) for assumed payment of income taxes. However, the assessor later learned that the company did not pay income taxes because it is a "Subchapter S" corporation, meaning the valuation for 2003 was significantly lower than it would have been if no discount for income taxes had been applied. Thus, despite a decrease in income in 2003 (the last year of the three-year weighted average for the 2004 valuation), there was evidence the value of the company for 2004, assuming no discount for income taxes, was at least as high as the erroneously discounted value for 2003.

The order is affirmed.

Judge VOGT and Judge CARPARELLI concur.