CITY AND COUNTY OF DENVER, Acting By and Through its BOARD OF WATER COMMISSIONERS, Plaintiff–Appellant,

v.

BOARD OF COUNTY COMMISSIONERS OF GRAND COUNTY and the Northwest Colorado Council of Governments, Defendants–Appellees.

CITY AND COUNTY OF DENVER, Acting By and Through its BOARD OF WATER COMMISSIONERS, Plaintiff–Appellant,

v.

BOARD OF COUNTY COMMISSIONERS OF the COUNTY OF EAGLE, Defendants–Appellees.

Nos. 86CA0703, 86CA0945.

Colorado Court of Appeals, Div. II.

June 9, 1988.

Rehearing Denied June 30, 1988.

Certiorari Granted Oct. 31, 1988.

Wayne D. Williams, Michael L. Walker, Henry C. Teigen, Casey S. Funk, Denver, for plaintiff-appellant.

Holme, Roberts & Owen, Henry W. Ipsen, Denver, Anthony J. DiCola, Grand County Atty., Hot Sulphur Springs, James R. Fritze, Eagle County Atty., Eagle, Barbara J.B. Green, Sp. Counsel, Frisco, for defendants-appellees.

Robert J. Golten, Breckenridge, for amicus curiae Summit County.

James G. Colvin, II, City Atty., Tad S. Foster, Asst. City Atty., Mark T. Pifher, Sr. Corporate Atty., Colorado Springs, John M. Dingess, Atty. for Aurora, Denver, for amicus curiae City of Colorado Springs and Aurora.

Frances M. Green, Boulder, for amicus curiae Holy Cross Wilderness Defense Fund.

KELLY, Chief Judge.

In these consolidated cases, plaintiff, the City and County of Denver, acting through its Board of Water Commissioners (Denver), appeals the declaratory judgments entered by the district courts of Eagle and Grand Counties. These judgments held that Denver must comply with regulations adopted by defendants, the Boards of County Commissioners of Eagle and Grand Counties (the Counties), pursuant to § 24–65.1–101, et seq., C.R.S. (1982 Repl. Vol. 10) which governs the construction of Denver's proposed municipal water projects in the unincorporated territories of the Counties.

In seeking to avoid the mandates of the Counties' regulations, Denver argues four propositions: (1) The Counties' regulations manifest an unlawful delegation by the General Assembly of its legislative power to determine what areas and activities are of state interest; (2) Denver is empowered by Colo. Const. art. XX to construct or add to its water works facilities free from regulatory interference by the Counties; (3) the Counties' regulations are an unconstitutional interference with Denver's right to appropriate and use water under Colo. Const. art. XVI; and (4) Denver is exempt from the Counties' regulations by the express provisions of the enabling legislation. We reject these arguments and therefore affirm.

The disputed water projects are the Eagle/Piney and Eagle–Colorado projects in Eagle County and the Williams Fork diversion project in Grand County. The purpose of these proposed projects is to extend Denver's municipal water works system through construction of raw water collection facilities and diversion structures to accommodate trans-mountain diversion of water from the western slope into the Denver metropolitan area. A portion of the water Denver plans to divert will be sold, leased, or otherwise supplied to consumers outside the City and County of Denver.

In 1974, the General Assembly enacted a statute concerning "Areas and Activities of State Interest," § 24–65.1–101, et seq., C.R.S. (1982 Repl.Vol. 10) (the Act). In so doing, the General Assembly declared that "land use, land use planning and quality of development are matters in which the state has responsibility for the health, welfare, and safety of the people of the state and for the protection of the environment of the state." Section 24–65.1–101(1)(c), C.R.S. (1982 Repl.Vol. 10). The purpose of the Act is to describe areas and activities which may be of state interest and establish criteria for the administration of these areas and activities. Further, the Act is intended to encourage local governments to designate areas and activities of state interest,

and to administer and promulgate guidelines for the administration of these areas and activities. Section 24–65.1–101(2), C.R.S. (1982 Repl.Vol. 10).

Included among the activities a local government may designate as matters of state interest are site selection and construction of major new domestic water and sewage treatment systems, major extensions of existing domestic water and sewage treatment systems, and the efficient utilization of municipal and industrial water projects. Section 24–65.1–203, C.R.S. (1982 Repl.Vol. 10). Criteria for the local government to follow in its administration of these activities are set forth in § 24–65.1–204, C.R.S. (1982 Repl.Vol. 10).

Once an activity has been designated as a matter of state interest, any person desiring to conduct that activity must file an application for a permit with the local government of the area in which the activity is to take place. Section 24–65.1–501(1)(a), C.R.S. (1982 Repl.Vol. 10). The local government may approve or deny the application based on whether the proposed activity complies with the local government's regulations and guidelines, § 24–65.1–501(4), C.R.S. (1982 Repl.Vol. 10), and may enjoin any person who does not obtain a permit from conducting the activity, § 24–65.1–501(6), C.R.S. (1982 Repl.Vol. 10).

Pursuant to the Act and the "Local Government Land Use Control Enabling Act," § 29–20–101, et seq., C.R.S. (1986 Repl.Vol. 12A), the Counties both adopted sets of regulations, nearly identical in substance, entitled "Guidelines and Regulations for Areas and Activities of State Interest" (the Regulations). *See* § 24–65.1–402, C.R.S. (1982 Repl.Vol. 10). The Regulations designate site selection and construction of major new domestic water and sewage treatment systems, major extensions of existing domestic water and sewage treatment systems, and the efficient utilization of municipal and industrial water projects as matters of state interest. The Regulations provide that no person, including "any political subdivision" of the state, may conduct these activities in the unincorporated territories of the Counties without first obtaining permits pursuant to the Regulations.

Under the Regulations, a permit application must be accompanied by a detailed environmental impact statement, a plan for mitigating the effects of the project on the environment, detailed engineering plans and specifications, a showing of the need for and the operational efficiency of the completed project, and a financial impact analysis. To be approved, permit applications must meet certain standards enumerated in the Regulations. These include a finding by the permitting authority (here, the defendant Boards of County Commissioners) that the proposed activity is necessary, does not conflict with state or local laws or master plans, will not significantly deplete resources or damage the environment, and, in the case of Eagle County, complies with certain water salinity standards.

It is the Counties' position that Denver must comply with the Regulations in constructing its water projects. Denver argues it is exempt from the permit requirement—both by virtue of its home rule status under the Colorado Constitution and under the express provisions of the Act—and has refused to apply for permits. It sought declaratory relief in the district courts that the Regulations could not constitutionally or statutorily be applied to Denver. The facts are undisputed, and both Denver and the Counties moved for summary judgment on the legal issues presented.

The district courts of both Eagle and Grand Counties granted the Counties' motions for summary judgment and ruled that the Regulations were facially valid and applied to Denver's proposed water projects. Further, both courts concluded that Denver was not immune from compliance with the Regulations under Colo. Const. art. XX, that on their face the Regulations were not an unconstitutional taking of Denver's water rights in violation of Colo. Const. art XVI, and that Denver was not excused from compliance with the Regulations by any of the statutory exemptions. The Ea-

gle County District Court also held that the Act was not an unconstitutional delegation of legislative power by the General Assembly to local governments.

Denver appealed the Grand County judgment directly to the Colorado Supreme Court, presumably because the issues may implicate the constitutionality of the Act. However, the Supreme Court concluded that the issues in the Grand County case were within the jurisdiction of the Court of Appeals and ordered that the case be transferred pursuant to § 13–4–110(2), C.R.S. (1987 Repl.Vol. 6A). The appeal in the Eagle County case was filed initially in this court, and because the issues in the two cases are identical, we ordered that they be consolidated for our review.

## I.

■ Denver argues that the Regulations manifest an unlawful delegation by the General Assembly of its legislative power to determine what areas and activities are of state interest. To the extent this argument calls into question the constitutionality of the Act, we decline to consider it because it is beyond our jurisdiction. *See People v. Salazar,* 715 P.2d 1265 (Colo. App.1985); § 13–4–102(1)(b), C.R.S. (1987 Repl.Vol. 6A). For our purposes, we presume that the Act is constitutional. *See Passarelli v. Schoettler,* 742 P.2d 867 (Colo.1987).

■ To the extent this argument asserts that the Regulations exceed the express grant of authority of the Act, we conclude that the Regulations, as adopted by the Counties, do not exceed the statutory grant of authority.

The Act is detailed and specific in empowering local governments to adopt guidelines and regulations for areas and activities of state interest. It is replete with definitions, provides an exclusive list of those areas and activities a local government may designate as matters of state interest, and mandates the permit application and approval process. Further, it establishes detailed criteria for the administration of areas and activities of state interest, provides for cooperation among the various levels of government, and sets guidelines for the designation and administration of matters of state interest.

Given the detail and specificity of the grant of authority in the Act, we conclude that the Regulations fall within the authority delegated to local governments by the Act. Moreover, as legislative enactments, the Regulations are presumed valid, and Denver has the burden of proving their invalidity beyond a reasonable doubt. *See Best v. La Plata Planning Commission,* 701 P.2d 91 (Colo.App.1984). This, Denver has failed to do.

## II.

Denver asserts that, as a home rule city under Colo. Const. art. XX, it is empowered to construct or add to its water works facilities outside its territorial limits free from regulatory interference by the Counties. We disagree.

Colo. Const. art. XX, § 1, states, in relevant part, that Denver:

"shall have the power, within or without its territorial limits, to construct, condemn and purchase, purchase, acquire, lease, add to, maintain, conduct, and operate water works ... and any other public utilities or works or ways local in use and extent, in whole or in part, and everything required therefore [sic], for the use of said city and county and the inhabitants thereof...."

Colo. Const. art. XX, § 6, empowers home rule cities (including Denver) to adopt charters and to legislate on local and municipal matters, and "such charter ... shall supersede within the territorial limits and other jurisdiction of said city or town any law of the state in conflict therewith."

Denver City Charter § C4.18 provides, in part:

"The Board [of Water Commissioners] shall have and exercise all the powers of the City and County of Denver including those granted by the Constitution and by the law of the State of Colorado and by the Charter in regard to purchasing, condemning and purchasing, acquiring, constructing, leasing, extending and adding

to, maintaining, conducting and operating a water works system and plant for all uses and purposes, and everything necessary, pertaining or incidental thereto...."

It is Denver's position that these constitutional and charter provisions extend Denver's legislative jurisdiction to every water project Denver proposes to construct anywhere in the state. Denver attempts, in effect, to designate these projects as matters of purely local and municipal interest. Such is not the case, however.

■ Colo. Const. art. XX recognizes three categories into which matters of local or state interest may be classified: (1) matters of exclusively local and municipal interest, where charter provisions are paramount; (2) matters of exclusively state interest, where statutes govern; and (3) matters of mixed local and state interest. *Denver & Rio Grande Western R.R. Co. v. Denver*, 673 P.2d 354 (Colo.1983). Only if the matter is of mixed local and state interest must it be determined whether there is a conflict between the charter provisions and the state statute. If there is no conflict, the charter provisions and the state statute may co-exist; but if there is a conflict, the statute supersedes the home rule charter provisions. *Denver & Rio Grande Western R.R. Co. v. Denver, supra.*

■ The respective legislative bodies of a municipality and the state are the judges in the first instance of whether a matter is of local or state interest. *Denver v. Colorado River Water Conservation District,* 696 P.2d 730 (Colo.1985). However, whether a particular activity is a matter of purely local and municipal interest depends upon the inherent nature of the activity and the impact or effect it may have on areas outside the municipality. *Denver v. Sweet,* 138 Colo. 41, 329 P.2d 441 (1958).

■ Here, the building of Denver's water projects in Eagle and Grand Counties may have a substantial impact on the environment and may greatly affect the health, welfare, and safety of Colorado citizens far removed from the City and County of Denver. These are precisely the concerns

which the Act was adopted to protect. Section 24–65.1–101(1)(c), C.R.S. (1982 Repl. Vol. 10).

Denver undoubtedly has a demonstrable interest in extending its water works to divert water into the city for use by its residents and those of areas contiguous to Denver. *See Denver v. Colorado River Water Conservation District, supra.* However, the state also has a demonstrable interest in Denver's water projects to the extent they have an impact on the environment or affect the health, welfare, and safety of the people of the state. *See Denver v. Colorado River Water Conservation District, supra;* § 24–65.1–101(1)(c), C.R.S. (1982 Repl.Vol. 10).

Accordingly, we conclude that Denver's water projects are matters of mixed local and state interest, and the Act is controlling to the extent Denver's Charter conflicts with its express provisions. *See Denver & Rio Grande Western R.R. Co. v. Denver, supra.* And, because the Act empowers local governments to designate such projects as matters of state interest and to adopt regulations to administer these projects, Denver must comply with the Counties' Regulations and must obtain permits prior to initiating construction on the projects.

The case of *Board of County Commissioners v. Denver Board of Water Commissioners,* 718 P.2d 235 (Colo.1986) is distinguishable. The issues there were whether Denver's Board of Water Commissioners was a public utility and, if so, whether the Public Utilities Commission (PUC) had the constitutional or statutory authority to regulate the water board's extra-territorial activities or require it to supply water to persons outside the city limits but within the metropolitan area.

The Supreme Court concluded that the water board fit the statutory definition of "public utility" set out in § 40–1–103(1)(a), C.R.S., and found nothing in the Colorado Constitution that would prohibit PUC regulation of the water board's extra-territorial delivery of water. However, the Court concluded that the PUC was statutorily

prohibited from regulating "rates, fees, tolls, or charges" prescribed or collected by a municipal utility under § 31–35–402(1), C.R.S., and observed, "there seems to be no basis or reason for PUC or other regulation of utility service in the absence of rate regulation."

Here, we are dealing with a type of regulation not contemplated by *Board of County Commissioners v. Denver Board of Water Commissioners, supra.* The Regulations in this case apply to Denver's construction of water projects in the unincorporated territories of Eagle and Grand Counties. This type of regulation is contemplated and expressly authorized by the Act.

### III.

■ Denver also contends that the Counties' Regulations are an unconstitutional interference with Denver's right to appropriate and use water under Colo. Const. art. XVI. We disagree.

Colo. Const. art. XVI, § 6, provides, in part: "The right to divert the unappropriated waters of any natural stream to beneficial uses shall never be denied."

These Regulations on their face do not purport to deny Denver the right to appropriate or divert water, but merely regulate the manner of effecting the appropriation and diversion. Although the General Assembly cannot prohibit the appropriation or diversion of unappropriated water for useful purposes, it has the power to regulate the manner of effecting an appropriation or diversion through legislation in order to protect and preserve the scarce water resources of our state. *Larimer County Reservoir Co. v. People ex rel. Luthe,* 8 Colo. 614, 9 P. 794 (1885); *see Kuiper v. Warren,* 195 Colo. 541, 580 P.2d 32 (1978). The permit procedure contained in the Act and effectuated by the Regulations is reasonably designed to achieve this purpose. *See Kuiper v. Warren, supra.*

■ In addition, since Denver has refused to apply for permits, we agree with the district courts that the issue whether the Regulations might be unconstitutional-

ly applied (*e.g.,* if the Counties were to deny Denver's permit applications without substantial justification) is not ripe for determination.

### IV.

Finally, Denver contends that it is exempt from the Counties' Regulations by the express provisions of the Act. Again, we disagree.

### A.

■ The first so-called "exemption" provides that, with regard to public utilities, nothing in the Act "shall be construed as enhancing or diminishing the power and authority of municipalities, counties, or the public utilities commission." Section 24–65.1–105, C.R.S. (1982 Repl.Vol. 10). Contrary to Denver's interpretation, however, we conclude that this section does not exempt Denver's water projects from compliance with the guidelines and regulations validly adopted by local governments pursuant to the Act.

The Act provides that any "person" who desires to conduct an activity of state interest must file an application for a permit with the local government in which the activity is to take place. Section 24–65.1–501(1)(a), C.R.S. (1982 Repl.Vol. 10). The definition of "person" in both the Act and the Regulations includes "any political subdivision" of the state. *See* § 24–65.1–102(6), C.R.S. (1982 Repl.Vol. 10). Because home rule cities are political subdivisions of the state, *Denver v. Sweet, supra,* Denver is not exempt under this section.

### B.

■ The second "exemption" claimed by Denver provides that nothing in the Act shall be construed as diminishing the rights of property owners or modifying or amending existing laws or court decrees with respect to the determination and administration of water rights. Section 24–65.1–106, C.R.S. (1982 Repl.Vol. 10). The argument lacks merit.

The Regulations on their face do not diminish Denver's property rights or modify or amend existing laws or court decrees with respect to the determination and administration of Denver's water rights. The Regulations merely address the manner of effecting Denver's appropriation or diversion of water. *See Larimer County Reservoir Co. v. People ex rel. Luthe, supra.* Thus, we find nothing in § 24–65.1–106 which purports to exempt Denver from compliance with the Regulations and the necessity of obtaining the required permits prior to construction of its water projects.

### C.

█ Finally, the only true exemptions in the Act are contained in § 24–65.1–107, C.R.S. (1982 Repl.Vol. 10), which provides, *inter alia,* that the Act shall not apply to any activity of state interest which "has been approved by the electorate" as of May 17, 1974. Denver insists that the General Assembly adopted this exemption for the express purpose of excluding from the operation of the Act the presently disputed water projects, which, presumably, were approved in a Denver bond election in 1973. We are not persuaded.

In construing statutes, the reviewing court must ascertain and give effect to the intent of the General Assembly. *People v. Guenther,* 740 P.2d 971 (Colo.1987). If the language of a statute creates an ambiguity, the court, in determining legislative intent, may consider, among other things, the object to be attained, the legislative history, laws on the same or similar subjects, the consequences of a particular construction, and the administrative construction of the statute. *Gamble v. Levitz Furniture Co.,* 759 P.2d 761 (Colo.App.1988); § 2–4–203, C.R.S. (1980 Repl.Vol. 1B).

We conclude that use of the word "electorate" in § 24–65.1–107(1)(b), C.R.S. (1982 Repl.Vol. 10) creates an ambiguity because it is susceptible of two interpretations, one meaning the local electorate of the area in which the activity of state interest is to take place, the other meaning the electorate of a municipality or other political subdivision of the state desiring to conduct the activity. A third possible interpretation, which has not been argued and we do not address here, is the electorate of the state.

Denver cites testimony before the Senate State Affairs Committee on April 11, 1974, to the effect that the exemption in § 24–65.1–107(1)(b) was intended to cover any water projects contemplated by the 1973 bond election. This testimony is inconclusive.

█ Even if we assume that "electorate" refers to the voters of the City and County of Denver, we note that the bond instrument approved by Denver voters in 1973 authorizes the issuance of water bonds "for the purpose of construction or otherwise acquiring improvements, extensions or additions to the municipal water works system and plant." Because of the lack of specificity in the bond instrument, we fail to see how Denver's water collection and diversion projects in Eagle and Grand Counties could be considered an "activity [that] has been approved by the [Denver] electorate." *See McNichols v. City & County of Denver,* 120 Colo. 380, 209 P.2d 910 (1949) (bond question must be construed primarily from the bond instrument itself).

To follow Denver's argument to its logical conclusion would mean that any and all water projects Denver might choose to construct, at any time in the future, anywhere in the state, would be exempt from the application of the Act. We conclude that the General Assembly did not intend such a result in adopting § 24–65.1–107(1)(b).

We note further that the other exemptions provided by § 24–65.1–107 all refer to approval by the local government of the area in which the activity is to be conducted, suggesting that "electorate" refers to the local electorate. Also, the model regulations promulgated by the Colorado Land Use Commission interpret "approved by the electorate" to mean approval "by the electorate of the state *or this jurisdiction;* provided that, approval by the electorate of any bond issue by itself shall not be construed as approval of the specific development or activity." Colo. Land Use Com-

mission, *House Bill 1041: Model Land Use Regulations* § 1–105(2) (1976) (emphasis added).

Thus, we conclude that the term "electorate" in § 24–65.1–107(1)(b) refers to the local electorate of the area in which the activity is to be conducted. Denver's water projects do not fall within this exemption.

Accordingly, the judgments of the district courts of Eagle and Grand Counties are affirmed.

SMITH and STERNBERG, JJ., concur.