**LEGGETT & PLATT, INC., a Missouri corporation; and The Gap, Inc., Plaintiffs–Appellants,**

v.

**Maria OSTROM, in her official capacity as Interim Finance Director and City Treasurer of the City of Thornton; and the City of Thornton, a municipal corporation, Defendants–Appellees.**

Nos. 09CA1322, 09CA2181.

Colorado Court of Appeals, Div. V.

Sept. 30, 2010.

Holland & Hart, LLP, Alan Poe, Greenwood Village, Colorado, for Plaintiffs–Appellants.

Margaret Emerich, City Attorney, Gary G. Jacobson, Assistant City Attorney, Melissa A. Beato, Assistant City Attorney, Thornton, Colorado; Williamson & Hayashi, LLC, David S. Williamson, Mary Lynn Benham, Boulder, Colorado, for Defendants–Appellees.

Opinion by Judge GRAHAM.

Plaintiffs, Leggett & Platt, Inc. and The Gap, Inc. (collectively, taxpayers), appeal the district court judgment upholding the order of defendants, Maria Ostrom, in her official capacity as Interim Finance Director and City Treasurer of the City of Thornton, and the City of Thornton (collectively, Thornton), denying their requests for a refund of sales taxes. We affirm.

## I. Background

### A. The Sales Transactions

The Gap operates retail stores throughout the United States and in Colorado, but does not own or operate any retail stores in Thornton. Leggett & Platt, doing business as Design Fabricators, manufactures store fixtures in its facility in Thornton. At all relevant times, Leggett & Platt held sales and use tax licenses issued by the Cities of Thornton, Colorado Springs, Denver, and Littleton.

Pursuant to a master vendor agreement, Leggett & Platt agreed to manufacture store fixtures for The Gap for use in The Gap's retail stores. The master vendor agreement specified "Free on Board (FOB) Terms" by providing "FOB terms will be Destination, Freight Collect." Notwithstanding the master vendor agreement, Leggett & Platt, at its loading dock in Thornton, loaded the store fixtures into vehicles either owned or hired and paid for by The Gap, which then delivered the fixtures to The Gap's retail stores located outside Thornton, and in some cases, outside Colorado. The bills of lading and Leggett & Platt's invoices specified that the "F.O.B. Point" was the "Shipping Point"; that the goods were shipped via "Customer[']s Truck" or Federal Express; that the goods were consigned [1] to The Gap; and that a loading fee was charged.

Leggett & Platt billed The Gap $40,613.43 for Thornton sales tax imposed on the purchase and sale of store fixtures made between April and June 2005 and $46.69 for Thornton sales tax imposed on the purchase and sale of store fixtures made in October 2007. The Gap paid the sales tax to Leggett & Platt, which then remitted the sales tax to Thornton.

1. Nothing in the record suggests that the goods invoiced were to be held in trust or for resale. Indeed, taxpayers specifically argue in one portion of their brief that the transactions were exempt sales. In any event, The Gap was invoiced for a purchase price and tendered payment for the goods.

Leggett & Platt also billed The Gap for sales tax imposed by the Cities of Colorado Springs, Denver, and Littleton on The Gap's purchases of store fixtures delivered to The Gap's retail stores in those cities. After The Gap paid Leggett & Platt the sales taxes, Leggett & Plat remitted the sales taxes to the respective cities.

## B. Leggett & Platt's Refund Claim

Leggett & Platt filed for a refund of the sales tax imposed on its sales of store fixtures to The Gap made between April and June 2005, arguing that the store fixtures were delivered to destinations outside Thornton and, thus, Thornton should not have imposed sales tax because no taxable retail sale or taxable transaction occurred in Thornton, as required by the City of Thornton City Code (the City Code), section 26–388(a)(3)(b). The City Code states that "[s]ales taxes are required to be imposed and collected from the purchaser or consumer on behalf of the City by any person engaged in business in the City and making a taxable retail sale or completing any other taxable transaction *within the City*." City Code § 26–388(a)(3)(b) (emphasis added). Leggett & Platt asserted that the sales tax should have "been based on the destination of the sale."

Thornton denied Leggett & Platt's refund claim, concluding that "the purchases were picked up at the dock in Thornton by the purchaser's truck" and, therefore, the sales were subject to Thornton's sales tax. Thornton also determined that the sales transactions were not exempt from taxation under the following version of section 26–390 of the City Code, which was in effect during the April through June 2005 time period:

(10) *Interstate commerce sales; shipment out of State.* The sales of tangible personal property shall be exempt from the operation of this code if both the following conditions exist:

a. The sales are to those who reside or do business outside the State.

b. The articles purchased are to be delivered to the purchaser outside the State by common, contract or commercial carrier, who is employed to effect delivery by the seller or by the conveyance of the seller or by mail; provided, however, that the article so purchased and so delivered is to be used, stored, distributed or consumed outside the State.

(11) *Intrastate Sales.*

. . . .

b. *Deliveries to nonresident outside City.* The sales of tangible personal property shall be exempt from the operation of this code if both the following conditions exist:

1. The sales are to those who reside or do business outside the City.

2. The articles purchased are to be delivered to the purchaser outside the City by common, contract or commercial carrier who is employed to effect delivery by the seller or by the conveyance of the seller or by mail; provided, however, that the article so purchased and so delivered is to be used, stored, distributed or consumed outside the City.

A hearing officer upheld Thornton's denial of Leggett & Platt's refund claim, concluding that the City Code "unambiguously requires that, to be exempt, deliveries must be made by the seller or its agent to the addresses outside Thornton (unless they are delivered by mail)," and that here, because "the common carrier hired to make delivery was employed at [The Gap's] direction and expense, exemptions provided by the Thornton [City Code] do not apply to the purchases."

Leggett & Platt then appealed to the Executive Director of the Colorado Department of Revenue (the department), which granted Leggett & Platt's request to join as parties the City and County of Denver, the City of Littleton, and the City of Colorado Springs (collectively, the joined cities). The department issued a final determination denying Leggett & Platt's refund claim, concluding that the relevant sales took place in Thornton because The Gap, "via the common carrier it hired, took possession of the goods at [Leggett & Platt's] dock in Thornton," and that "[w]here the goods were eventually delivered elsewhere in Colorado is immaterial," because "[g]oods transferred by possession are included in the definition of 'sale' under the [City] Code at § 26–388." The department also concluded that the sales transactions

were not exempt from sales tax under the applicable version of section 26–390 of the City Code. In construing the exemption, the department stated:

> Grammatical considerations aside, the Department finds the exemption's intent to be clear. Its purpose is to avoid misrepresentations by the purchaser as to the site of the goods['] ultimate use. It is axiomatic that the purchaser, not the seller, would know the site of ultimate use. That is why the exemption applies to situations where the common carrier is hired by the seller, not the buyer. While no such misrepresentations are involved in this case, this is central to the determination of the drafter's intent. If the rule were construed such that the buyer could employ a common carrier to pick up the goods at the seller's dock and then direct that the goods be delivered to various locations, then, absent an audit of bills of lading or invoices, it would be impossible to distinguish taxable sales from non-taxable sales.

The department also noted that an August 2006 amendment to section 26–390(11)(b), although not dispositive of the earlier version's intent, "made it very clear that 'by the seller' modifies the word 'employed.'" As amended, section 26–390(10) and (11)(b) of the City Code state that "sales of tangible personal property shall be exempt from" sales tax if (1) the "sales are to those who reside or do business outside" Colorado or Thornton; and (2) the "articles purchased are delivered to the purchaser outside" Colorado or Thornton *"with the seller's vehicle* or by common, contract or commercial carrier, *who is employed by the seller* to effect delivery to the purchaser." (Emphasis added.)

### C. The Gap's Refund Claims

Like Leggett & Platt, The Gap also filed for a refund in the amount of $40,613.43 for the sales taxes imposed on its purchases of store fixtures from Leggett & Platt made between April and June 2005, arguing that the sales did not take place in Thornton; that even if the sales did occur in Thornton, the sales were exempt from Thornton sales tax under section 26–390 of the City Code; and that the imposition of the sales tax violated the Commerce Clause of the United States Constitution. Thornton denied The Gap's refund claim as untimely, and the Gap appealed to a hearing officer. The hearing officer determined that the exemption in the City Code was not applicable because delivery was effectuated by the purchaser, and not the seller. The hearing officer further held that

> the sale did take place at [Leggett & Platt's] Thornton location, giving rise to a taxable event, due to the fact that [Leggett & Platt] entered into a purchase agreement with [The Gap] and the merchandise purchased by [The Gap] was made available to [it] at [Leggett & Platt's] dock, which is located within the limits of the City of Thornton. [The Gap], by taking possession of the goods it purchased at [Leggett & Platt's] dock, caused a taxable event sale to take place in Thornton, not in any outside location where goods may have been delivered. This is in accord with the definition of purchase found in the [City] Code, section 26–388, which includes goods transferred by possession of those goods within the definition of taxable events. It is clear that a sale took place within the City, thus giving rise to a taxable event.

The Gap also submitted a refund claim in the amount of $46.69 for sales tax paid on purchases occurring in October 2007 on the same bases as its earlier refund claim. Thornton denied the refund claim, concluding that "the invoice shows the shipping terms as 'F.O.B. Shipping Point[ ],' establishing that the common carrier was not employed by the seller . . . to deliver the goods" and, thus, the exemption set forth in the amended version of City Code section 26–390(10) was not applicable.

### D. Taxpayers' Appeals to the District Court

Leggett & Platt appealed to the Denver District Court, and The Gap appealed to the Adams County District Court. The cases were consolidated in the Denver District Court. In their joint brief, taxpayers argued (1) that the sales transactions did not occur in Thornton; (2) that the sales transactions were exempt from Thornton sales tax under

provisions of the City Code because the store fixtures were delivered outside Thornton by common, contract, or commercial carriers; and (3) that imposition of Thornton sales tax on the sales transactions violated the Commerce Clause of the United States Constitution and the Due Process Clauses of the United States and Colorado Constitutions. Taxpayers requested that the court reverse Thornton's denials of their refund claims and order that the Thornton sales tax be refunded to The Gap. Taxpayers alternatively requested that, if the court determined that The Gap was not entitled to a refund of the Thornton sales tax, they be given an opportunity to submit evidence establishing the amount of sales tax paid to the joined cities with respect to The Gap's purchases of store fixtures delivered to its retail stores located in the joined cities so that the court could order the joined cities to refund to The Gap those amounts of sales tax in accordance with section 29–2–106.1(6), C.R.S.2010.

On May 13, 2009, the district court issued an order upholding Thornton's denial of taxpayers' refund claims. The court concluded that the sales transactions were taxable events that occurred in Thornton, noting that "once possession was transferred to a carrier, a taxable event/purchase occurred in the City of Thornton"; that the sales transactions were not exempt from sales tax under section 26–390 of the City Code, because The Gap, rather than Leggett & Platt, hired and paid for the common carrier to deliver the goods; and that the imposition of the sales tax on the purchases did not violate the Commerce Clause, because "there was in fact a taxable event which took place in Thornton" which was not eligible for an exemption.

### E. The Taxpayers' Notices of Appeal

The Gap filed a notice of appeal on June 25, 2009, stating that the May 13 order resolved all the claims and issues in its case, but not all the claims and issues in Leggett & Platt's case—namely, Leggett & Platt's claim seeking recovery of the sales tax paid to the joined cities. In response, Thornton filed a motion for determination of finality and jurisdiction, noting that it "believe[d]" the May 13 order "intended to resolve all of the issues

and claims raised by all of the parties, including all claims asserted by Leggett & Platt, and that this [was] a final judgment." A motions division of this court remanded the case to the district court for clarification "as to whether there remain unresolved claims against the 'joined cities,' and if so, whether certification of the May 13, 2009 order, pursuant to C.R.C.P. 54(b), is appropriate."

On remand, the district court concluded that C.R.C.P. 54(b) certification was "neither appropriate nor necessary" because in its prior order

> the determination of the taxable event occurring in Thornton necessarily determined the claims against the "joined cities" as the issue resolved similar sales taxes paid to the [joined] cities [that] were for the same transactions. That is, this Court's ruling that Thornton was entitled to collect tax on the transactions means that any corresponding tax on the same transactions collected by the "joined cities" is to be refunded.

On October 9, 2009, Leggett & Platt filed a notice of appeal. The Gap and Leggett & Platt then filed a motion for leave to file an amended notice of appeal to join Leggett & Platt as appellants in The Gap's appeal. Thornton filed a motion to dismiss Leggett & Platt's appeal, arguing that the appeal was not filed within forty-five days of the May 13 order and was therefore untimely.

A motions division of this court consolidated the two appeals and deferred to this division the motion to amend The Gap's notice of appeal to join Leggett & Platt as appellants. We issued an order denying Thornton's motion to dismiss Leggett & Platt's appeal and granting taxpayers' motion to amend the notice of appeal to include Leggett & Platt as appellants in The Gap's appeal. However, we ordered that no supplementation of the record and no further briefing were required.

### II. Standard of Review

■ We review appeals of tax assessments de novo. § 29–2–106.1(7), C.R.S.2010; *Catholic Health Initiatives Colo. v. City of Pueblo*, 207 P.3d 812, 817 (Colo.2009). We also review the district court's interpretation of the applicable City Code provisions de novo.

*Waste Mgmt. of Colo., Inc. v. City of Commerce City,* 250 P.3d 722, 724–25 (Colo.App. 2010); *see also Bd. of Cnty. Comm'rs v. ExxonMobil Oil Corp.,* 192 P.3d 582, 585 (Colo.App.2008) (statutory interpretation is a question of law that appellate court reviews de novo), *aff'd,* 222 P.3d 303 (Colo.2009).

When reviewing a municipal ordinance or code, we construe it using the same rules that we use in interpreting statutes. *Waste Mgmt.,* 250 P.3d at 725; *Mahaney v. City of Englewood,* 226 P.3d 1214, 1217 (Colo. App.2009). Our primary task in interpreting statutes and municipal codes is to give effect to the intent of the drafters, which we do by looking to the plain language. *Waste Mgmt.,* 250 P.3d at 725; *JJR 1, LLC v. Mt. Crested Butte,* 160 P.3d 365, 370 (Colo.App.2007); *see also Hygiene Fire Prot. Dist. v. Bd. of Cnty. Comm'rs,* 205 P.3d 487, 490 (Colo.App.2008), *aff'd,* 221 P.3d 1063 (Colo.2009). We should read statutes and municipal codes in such a way as to give effect to every word. *Waste Mgmt.,* 250 P.3d at 725; *Hygiene Fire Prot. Dist.,* 205 P.3d at 490. We also must consider the language used in the context of the statute or code as a whole, and we must give effect to the ordinary meaning of the language and read the provisions as a whole, construing each consistently and in harmony with the overall statutory design, if possible. *Waste Mgmt.,* 250 P.3d at 725; *Hygiene Fire Prot. Dist.,* 205 P.3d at 490. Interpretations that will render words or phrases superfluous should be rejected. *Waste Mgmt.,* 250 P.3d at 725; *Hygiene Fire Prot. Dist.,* 205 P.3d at 490. Likewise, we must avoid interpretations that produce illogical or absurd results. *People v. Cross,* 127 P.3d 71, 74 (Colo.2006); *Waste Mgmt.,* 250 P.3d at 725.

If the language of a statute or code provision is clear and the intent of the legislative body that enacted it may be discerned with certainty, we need not resort to other rules of statutory interpretation. *Waste Mgmt.,* 250 P.3d at 725; *W. Fire Truck, Inc. v. Emergency One, Inc.,* 134 P.3d 570, 573 (Colo.App.2006). We give deference to the interpretation provided by the officer or agency charged with the administration of the code or statute unless that interpretation is inconsistent with the legislative intent manifested in the text of the statute or code. *Waste Mgmt.,* 250 P.3d at 725; *see also Gen. Motors Corp. v. City & Cnty. of Denver,* 990 P.2d 59, 74 & n. 15 (Colo.1999) (noting deference due to Denver manager of revenue's interpretation of sales and use tax exemption in city code). Moreover, when the language of the statutory or code provision at issue is ambiguous, we may also look to legislative history, prior law, the consequences of a given construction, and the goal of the statutory scheme to ascertain the correct meaning of the provision. *Bd. of Cnty. Comm'rs v. Costilla Cnty. Conservancy Dist.,* 88 P.3d 1188, 1193 (Colo.2004); *Waste Mgmt.,* 250 P.3d at 725.

Further, a longstanding rule of statutory construction in Colorado provides that tax provisions like those at issue here will not be extended beyond the clear import of the language used, nor will their operation be extended by analogy. *City of Boulder v. Leanin' Tree, Inc.,* 72 P.3d 361, 367 (Colo. 2003); *Associated Dry Goods Corp. v. City of Arvada,* 197 Colo. 491, 496, 593 P.2d 1375, 1378 (1979); *Waste Mgmt.,* 250 P.3d at 725. In addition, we must construe all doubts against the government and in favor of the taxpayer. *Leanin' Tree, Inc.,* 72 P.3d at 367; *Associated Dry Goods Corp.,* 197 Colo. at 496, 593 P.2d at 1378; *Waste Mgmt.,* 250 P.3d at 725.

Finally, we "construe tax exemptions narrowly, and in favor of the taxing authority." *Gen. Motors,* 990 P.2d at 70. As a general rule, "the presumption is against tax exemption and the burden is on the one claiming exemption to establish clearly the right to such relief." *Maurer v. Young Life,* 779 P.2d 1317, 1333 n. 20 (Colo.1989); *see also* City Code § 26–391(b). "Every reasonable doubt should be resolved against" the tax exemption. *United Presbyterian Ass'n v. Bd. of Cnty. Comm'rs,* 167 Colo. 485, 496, 448 P.2d 967, 972–73 (1968).

## III. Taxable Events "Within the City"

We first address whether Leggett & Platt's sales of store fixtures to The Gap were taxable as retail sales "within the City"

under the City Code. Taxpayers argue that, under the Colorado Uniform Commercial Code (UCC), because the master vendor agreement specified that delivery was F.O.B. place of destination, The Gap did not "acquire" the store fixtures until they were delivered to its retail stores located outside Thornton and, thus, the taxable events occurred outside Thornton and no sales tax should have been levied. Thornton argues that, under the City Code, taxable events occurred in Thornton, because The Gap acquired, or obtained possession of, the goods in Thornton when the goods were loaded onto common carriers hired and paid for by The Gap at Leggett & Platt's loading dock in Thornton. We agree with Thornton and conclude that, under the City Code, the sales transactions were taxable events "within the City."

Thornton is a home rule municipality formed pursuant to article XX, section 6, of the Colorado Constitution. As such, Thornton is constitutionally empowered to adopt a sales tax. *Apollo Stereo Music Co. v. City of Aurora,* 871 P.2d 1206, 1208 (Colo.1994); *Berman v. City & Cnty. of Denver,* 156 Colo. 538, 542–44, 400 P.2d 434, 436–37 (1965).

The City Code provides that "[s]ales taxes are required to be imposed and collected from the purchaser or consumer on behalf of the City by any person engaged in business in the City and making a taxable retail sale or completing any other taxable transaction *within the City.*" City Code § 26–388(a)(3)(b) (emphasis added). The City Code requires that a sales tax shall be levied on "the price paid or charged upon the sale [or] purchase ... of tangible personal property purchased." City Code § 26–389(a)(21). "Purchase, Sale" is defined in the City Code as "the acquisition for any consideration by any person of tangible personal property," which includes property acquired by "[t]ransfer, either conditionally or absolutely, of title *or possession* or both to tangible personal property.*" City Code § 26–388(c) (emphasis added). The City Code further states that it is the legislative intent of Thornton

> that, for purposes of this Code, every person who is engaged in business in the City, as defined in Section 26–388, and who shall

> *deliver or cause to be delivered to the purchaser in the City* any property or services taxable in this Code is exercising a taxable privilege and shall collect the tax imposed by this Code on the total purchase price of such articles of tangible personal property or taxable services that are purchased, sold, leased or rented at any time by or to every customer or buyer in the manner set forth in this Code.

City Code § 26–386(b) (emphasis added).

Thus, the elements necessary to constitute a "purchase" or "sale" under the City Code are (1) transfer of title *or possession,* or both of (2) tangible personal property, for (3) consideration. City Code § 26–388(c). Because it is clear that there was a transfer of tangible personal property for consideration, we must determine whether the sales involved a transfer of title or possession to The Gap in Thornton so as to make those transfers taxable retail sales "within the City." *See* City Code § 26–388(a)(3)(b)

Taxpayers argue that, under the Colorado UCC, because the master vendor agreement specified that the F.O.B. terms were "Destination, Freight Collect," The Gap "acquired" the store fixtures when they were delivered to The Gap's retail stores, which were located outside Thornton, and, thus, the purchase and sale of the goods did not occur "within the City." Because we conclude that at least possession of the goods, if not title to them, was transferred at the loading dock in Thornton, we reject taxpayers' argument.

Section 4–2–401(2), C.R.S.2010, of the Colorado UCC prescribes when title to merchandise passes to the buyer:

> (2) Unless otherwise explicitly agreed, title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place; and in particular and despite any reservation of a security interest by the bill of lading:

> (a) If the contract requires or authorizes the seller to send the goods to the buyer but does not require him to deliver them at

destination, title passes to the buyer at the time and place of shipment; but

(b) If the contract requires delivery at destination, title passes on tender there.

In addition, the Colorado UCC provides:

(1) Unless otherwise agreed the term F.O.B. (which means "free on board") at a named place ... is a delivery term under which:

(a) When the term is F.O.B. the place of shipment, the seller must at that place ship the goods in the manner provided in this article (section 4–2–504) and bear the expense and risk of putting them into the possession of the carrier; or

(b) When the term is F.O.B. the place of destination, the seller must at his own expense and risk transport the goods to that place and there tender delivery of them in the manner provided in this article (section 4–2–503).

§ 4–2–319(1)(a)–(b), C.R.S.2010.

 In contrast, transfer of possession of goods is not necessarily dependent upon F.O.B. terms. Transfer of physical possession of goods is a constitutionally permissible taxable event, regardless of technical considerations regarding the time and place of passage of title which might turn on the degree of control short of transfer of physical possession. *See McGoldrick v. Berwind–White Coal Mining Co.,* 309 U.S. 33, 43, 49, 60 S.Ct. 388, 84 L.Ed. 565 (1940) (New York City sales tax was on the "transfer of title or possession, or both," and, thus, a buyer who accepted delivery in the taxing state is not exempt from the sales tax because he came from another state and intended to return to his home state with the goods).

We conclude that the purchase and sale of the store fixtures occurred "within the City" of Thornton. Here, contrary to the terms of the master vendor agreement, the bills of lading and invoices showed that all the sales transactions at issue in this case were actually "F.O.B. Shipping Point," which was Leggett & Platt's loading dock in Thornton. Further, it is undisputed that Leggett & Platt delivered the goods at its loading dock in Thornton to common carriers hired and paid for by The Gap, which then transported the goods to predetermined destinations outside Thornton. Therefore, the F.O.B. term certainly shows that possession of the goods, if not also acquisition of title, transferred to The Gap at Leggett & Platt's loading dock in Thornton. Accordingly, The Gap at least took possession of the goods "within the City." It also appears that title to the goods passed to The Gap when Leggett & Platt completed its performance by delivering the goods at its loading dock in Thornton to common carriers hired and paid for by The Gap. However, only the transfer of possession of the property was required to justify the imposition of the tax. The record before us indicates that the transfer of possession took place in Thornton and, therefore, a taxable event as defined by the City Code occurred there. *See id.*

Furthermore, once the transfer of the goods was made in Thornton to trucks hired and paid for by The Gap, exclusive possession of the merchandise was in The Gap, and at no time thereafter did Leggett & Platt exercise any control or direction of the transaction. *See Mossberg–Hubbard Div. v. Norberg,* 432 A.2d 1176, 1179 (R.I.1981). Therefore, there is sufficient evidence to support the findings of the district court that the transfer of possession of goods in the instant case occurred in Thornton, regardless of when and where passage of title to the goods occurred. *See id.*

To the extent taxpayers contend that section 29–2–105(1)(b), C.R.S.2010, stands for the principle that "sales taxes apply at the destination of the taxable property," we need not address any supposed inconsistency between that section and the City Code, because taxpayers do not argue on appeal that the City Code does not comply with section 29–2–105(1)(b).

## IV. Interstate and Intrastate Exemptions

Taxpayers alternatively argue that, even if the sales transactions occurred in Thornton, the exemptions for interstate and intrastate sales under section 26–390(10) and (11)(b) of the City Code apply to the transactions and, thus, Thornton sales tax should not have been imposed. Again, we disagree.

A. Applicability of Exemptions to Sales Transactions Made Between April and June 2005 Under Pre–Amendment Version of Section 26–390

[18] As set forth above, the version of section 26–390 of the City Code applicable to taxpayers' claims for refund of sales taxes imposed between April and June 2005 provided in relevant part that "sales of tangible personal property shall be exempt" from the imposition of sales tax if (1) the sales are "to those who reside or do business" outside Thornton or Colorado; and (2) the articles purchased are to be delivered to the purchaser outside Thornton or Colorado by common, contract or commercial carrier *"who is employed to effect delivery by the seller* or by the conveyance of the seller or by mail." City Code § 26–390(10), (11)(b) (emphasis added).

The dispute here involves the second element requiring that the common, contract, or commercial carrier must be employed by the seller in order for the interstate and intrastate exemptions to apply. Taxpayers contend that section 26–390 does "not make the exemption contingent on which party (the seller or the purchaser) hired the carrier." Specifically, taxpayers assert that the phrase "by the seller" modifies the term "delivery," and not the term "employed."

The district court disagreed, concluding that, under the plain language of section 26–390(10) and (11)(b), "the exemption and refund are not available unless the common carrier is employed by the seller." The court concluded that, if it were to adopt taxpayers' construction of section 26–390, it would be "possible that sellers and purchasers could easily thwart taxation by the City by consistently delivering purchases through a common carrier hired by the purchaser," noting that "the seller is in the best position to guarantee the final destination of the purchases."

The district court further reasoned that, even if the language in section 26–390(10) and (11)(b) contains a grammatical fault and is therefore ambiguous, the subsequent amendments to the City Code clarified that, for the exemptions to apply, the seller must "hire the common carrier." As amended,

section 26–390 provides that the "sales of tangible personal property shall be exempt" from Thornton sales tax if (1) the "sales are to those who reside or do business outside" Thornton or Colorado; and (2) the articles purchased are "delivered to the purchaser outside" Thornton or Colorado *"with the seller's vehicle"* or by common, contract or commercial carrier *"who is employed by the seller* to effect delivery to the purchaser." City Code § 26–390(10), (11)(b) (emphasis added). The district court determined that the amendment constituted a "clarification" that "bolster[ed] the intent or goal of the statutory scheme of the [City] Code, and is consistent with the purpose of the exemption, i.e., to prevent items from being delivered outside the City in order to qualify for the exemption and then taken directly back to the City for use."

We agree with the district court's reasoning and analysis of the plain language of the exemptions.

Such interpretation comports with the regulations adopted by Thornton's City Treasurer. *See* § 26–392(a)(2) ("The City Treasurer, with the approval of the City Manager, shall adopt rules and regulations to aid in the administration and interpretation of this Code."). Regulation 9–13.L, which governs intrastate sales, states:

Any sale of tangible personal property to a purchaser residing or doing business outside of the City [is] exempt, provided that the delivery thereof is made to such purchaser by a carrier *employed by the vendor,* by the conveyance of the seller or vendor, or by mail.

*When tangible personal property is located within Thornton at the time of sale and is delivered within the City either to a purchaser or his agent, including but not limited to a common contract or commercial carrier, the transaction is a taxable event,* irrespective of where the parties to the contract of sale are located, or where the contract is made or accepted, or where the purchase price is paid.

(Emphasis added.)

Regulation 9–13.C, which governs interstate commerce and shipments out of state,

provides in relevant part: "Tangible personal property located within the City at the time of sale and delivered within the City to the purchaser or his agent, is taxable, irrespective of the ultimate destination of the property sold." It further sets forth the following exemption, which is similar to the exemptions in the pre-amendment version of section 26–390:

> Tangible personal property located within the City at the time of sale which is delivered to the purchaser by the vendor or by *a common carrier employed to effect delivery by the vendor* to a destination, and for use, outside of the City and State is not taxable. *The vendor's* sales tickets which show the name and address of the consignee, the vendor's shipping records, bills of lading or other proof satisfactory to the City Treasurer must be retained to substantiate any exemption allowed for sales in interstate commerce.

(Emphasis added.)

Department of Revenue Sales and Use Tax Regulation 201–4:39–26–704.2(4) contains substantially similar language to Regulation 9–13.C:

> Sales of tangible personal property located within this state at the time of sale and delivered to the purchaser by the vendor *or by common carrier* to a destination outside this state for use outside this state are not taxable. *Vendor's* shipping records, bills of lading, or other proof satisfactory to the executive director must be retained to substantiate any exemption allowed for such sales in interstate commerce.

1 Code Colo. Regs. 201–4:39–26–704.2(4).

By referring solely to the *vendor's* sales tickets and shipping records, the second sentence in both regulations modifies the first and makes clear that, if a common carrier is used to effect delivery, the exemption applies only if the common carrier is employed by the vendor or seller. If the exemption was also intended to apply in circumstances where, as here, the *purchaser* employed the common carrier to effect delivery of the goods, there would be no reason for the regulations' exclusive reference to the *vendor's* sales tickets and shipping records;

rather, the regulations seemingly would have referred to the *purchaser's* sales tickets and shipping records in addition to the *vendor's* sales tickets and shipping records.

The reason for this interpretation is simple, practical, and fair. Where an out-of-state consumer purchases goods in Thornton and then pays for the goods to be shipped from Thornton to an out-of-state location, such sale clearly takes place in Thornton, and the purchasing consumer pays sales tax. However, if a vendor in Thornton ships goods to an out-of-state purchaser with its own vehicle or hires a common carrier to ship the goods, the sale takes place out of state at the point of destination (i.e., F.O.B. destination) and is not subject to Thornton sales tax. In either situation, few could question the fairness of fixing the taxable event at the point of sale or the practicality of using the bills of lading as proof of the point of sale.

■■ Furthermore, subsequent clarification of ambiguous legislation is one accepted aid to the discovery of legislative intent. *Frank M. Hall & Co. v. Newsom,* 125 P.3d 444, 451 (Colo.2005); *see also Douglas Cnty. Bd. of Equalization v. Fid. Castle Pines, Ltd.,* 890 P.2d 119, 125 (Colo.1995); *Rickstrew v. People,* 822 P.2d 505, 508 (Colo.1991). This is so especially where the amendment was adopted soon after the interpretive controversy arose and was for the purpose of making plain what the legislation had been all along. *Newsom,* 125 P.3d at 451 (citing 1A Norman J. Singer, *Sutherland Statutory Construction* § 22:30, at 380 (6th ed.2000)). Here, after Leggett & Platt's January 2006 refund claim, Thornton responded quickly and decisively to correct any ambiguity in the City Code provisions. Within months, Thornton adopted the August 2006 amendment, clarifying that, in order for the exemption to apply under section 26–390(10) or (11)(b), the purchased articles must be "delivered to the purchaser outside" Thornton or Colorado *"with the seller's vehicle"* or by common, contract or commercial carrier *"who is employed by the seller* to effect delivery to the purchaser." City Code § 26–390(10), (11)(b) (emphasis added). It thus made clear its original intent that a common carrier be hired and paid for by the

seller, by moving the phrase "by the seller" immediately after "employed." Section 26–390(10) and (11)(b) now remove any doubt that Thornton intends to exempt from sales tax only those interstate and intrastate sales where the articles are delivered to the purchaser (1) with the seller's vehicle or (2) by common, contract, or commercial carrier who is employed by the seller. *See Newsom*, 125 P.3d at 451. Thus, here, because Leggett & Platt delivered the goods, F.O.B. shipping point, at its loading dock to a common carrier that was employed by The Gap, which then delivered the goods to destinations outside Thornton and Colorado, the exemptions under section 26–390(10) and (11)(b) do not apply.

**B. Applicability of Exemptions to Sales Transactions Made in October 2007 Under Amended Version of Section 26–390**

Taxpayers do not appear to dispute, and we agree, that the amended version of section 26–390 applies to the October 2007 sale transaction, and that under that version of section 26–390, the October 2007 sale transaction is not exempted from sales tax.

**V. Commerce Clause Challenge to Sales Tax**

██ Taxpayers next assert that Thornton's sales tax assessment violates the Commerce Clause of the United States Constitution, U.S. Const. art. I, § 8, cl. 3. We perceive no violation.

As we previously determined, the sales transactions took place in Thornton. Thus, the transactions did not constitute interstate commerce, and the Commerce Clause is not implicated. *See C & A Carbone, Inc. v. Town of Clarkstown*, 511 U.S. 383, 389, 114 S.Ct. 1677, 128 L.Ed.2d 399 (1994) (the threshold inquiry in dormant Commerce Clause analysis is whether interstate commerce is even at issue); *cf. AT & T Commc'ns of Mountain States, Inc. v. State*, 778 P.2d 677, 682 (Colo.1989) (state telephone services tax statute did not violate or even implicate the Commerce Clause of the Federal Constitution, as such statute limited taxation to intrastate telephone services). In any event, the City Code explicitly exempts from

sales tax those sales transactions that are consummated out of state, thereby avoiding Commerce Clause implications. Specifically, when a seller, who is engaged in business in Thornton, uses its own vehicle or employs a common carrier to deliver goods to an out-of-state purchaser (i.e., F.O.B. destination), the sale and purchase of the goods takes place out of state and, thus, a transaction in interstate commerce occurs, which would be exempt under the City Code. *See* City Code § 26–390(10).

**VI. Due Process Clause Challenge to Sales Tax**

██ Taxpayers also assert that, because "no connection exists between Thornton and The Gap or between Thornton and The Gap's purchases of store fixtures delivered by carriers to The Gap at its stores located outside of Thornton," Thornton's sales tax assessment violates the Due Process Clauses of the Fourteenth Amendment to the United States Constitution, U.S. Const., Amend. XIV, § 1, and article II, section 25 of the Colorado Constitution. For the same reasons stated above, we reject taxpayers' assertion.

**VII. Multiple Taxation**

Finally, we note that the joined cities have not appealed the district court's ruling that they are required to refund the sales taxes imposed on the same transactions that were taxed by Thornton. Thus, we do not address any issue related to multiple taxation.

The judgment is affirmed.

Judge ROMÁN and Judge TERRY concur.