COLORADO COURT OF APPEALS 2017COA118

Court of Appeals No. 16CA1355
Jefferson County District Court No. 15CV31189
Honorable Christopher C. Zenisek, Judge

Sodexo America, LLC,

Plaintiff-Appellant,

v.

City of Golden, Colorado; and Jeff Hansen, in his official capacity as Finance
Director of the City of Golden, Colorado,

Defendants-Appellees.

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division IV
Opinion by JUDGE J. JONES
Graham and Welling, JJ., concur

Announced September 7, 2017

Silverstein & Pomerantz LLP, Neil I. Pomerantz, Mark E. Medina, Michelle
Bush, Denver, Colorado, for Plaintiff-Appellant

Williamson and Hayashi, LLC, David S. Williamson, Mathew M. Munch,
Boulder, Colorado, for Defendants-Appellees

Cynthia H. Coffman, Attorney General, Stephanie Scoville, Assistant Attorney
General, Jeremy Hueth, Special Assistant Attorney General, Denver, Colorado,
for Amici Curiae Colorado Higher Education Institutions

¶ 1   Sodexo America, LLC (Sodexo) provides food services and food to the Colorado School of Mines (Mines) pursuant to a contract with Mines. Mines, in turn, contracts with its students to provide them food (the food obtained, prepared, and served by Sodexo) through different types of meal plans. The City of Golden (the City) taxes Sodexo for students' use of the meal plans. This, Sodexo maintains, violates the Colorado Constitution and the Golden Municipal Code (2015) (Code or GMC).[1]

¶ 2   The district court disagreed with Sodexo and granted summary judgment for the City on Sodexo's challenges to the City's assessment and denial of refunds, leading to this appeal. Departing from the decision of another division of this court in *City of Golden v. Aramark Educational Services, LLC*, 2013 COA 45, involving a similar arrangement, we hold that, under the relevant contract and pursuant to the plain language of the Code, no sales occur between Sodexo and Mines' students with meal plans. Instead, Sodexo sells meal plan meals to Mines at wholesale. And since the Code expressly exempts wholesale sales from taxation, the City's assessment is invalid. We therefore reverse the district court's

---

[1] We apply the 2015 version of the Code throughout.

summary judgment and remand the case for entry of judgment in Sodexo's favor.

## I. Background

¶ 3    The contract between Sodexo and Mines requires Sodexo to "provide food services for [Mines] students, faculty, staff, employees and invited guests." It defines food services as "[t]he preparation, service and sale of food, beverages, and select goods, merchandise and other items to be agreed upon by [Mines] and Sodexo . . . , including catering, concessions, retail and meal plans." But the contract also says that the food and other tangible items Sodexo provides are deemed Mines' property alone; Sodexo is essentially Mines' go-between for that food.

¶ 4    Sodexo provides food services by operating and staffing all of the dining facilities on Mines' campus, both traditional residential dining facilities and "branded" dining facilities, including the Slate Cafe, Diggers' Den Food Court, Subway, and Einstein Bros. Bagels. A student buying a meal plan from Mines (pursuant to a contract with Mines, as explained below) can redeem her meal plan meals at any of these facilities. The facilities aren't advertised to the public and are used primarily by Mines' students and staff. On rare

occasion, members of the public buy food from the facilities using cash or a credit card.

¶ 5      Sodexo's contract with Mines sets the prices Mines pays Sodexo for each meal that a student redeems pursuant to a meal plan the student has purchased from Mines.  It also stipulates that any increase or decrease in these prices requires Mines' prior approval.

¶ 6      Mines requires every student living in a residence hall to select a meal plan from among several options; students living off-campus may purchase meal plans.  Each meal plan includes a certain number of weekly meals and a sum of "Munch Money," a declining balance of points/dollars that can be used at any retail food location on campus.  At the end of each semester, students lose any unused balance of meals and Munch Money.  These terms are memorialized in contracts that Mines enters into with its students; Sodexo doesn't enter into any food purchase contracts with Mines' students.

¶ 7      The students' contracts describe the available meal plan options and how much they cost.  Mines alone determines prices and terms, without Sodexo's approval, and charges the cost of the

meal plans to the students' Mines accounts. Only Mines can charge and collect amounts owed for meal plans.

¶ 8 Students redeem meal plan meals and Munch Money using "BlasterCards" provided by Mines. Mines electronically syncs each student's BlasterCard with the meal plan the student has purchased from Mines. So each time a student "swipes" her BlasterCard on a card reader at a dining facility, Mines' software automatically deducts a meal (or Munch Money) from the student's account.

¶ 9 Periodically, Mines reports the number of meals used under each of its meal plans to Sodexo.[2] Sodexo then invoices Mines based on the report. The per meal prices Mines pays Sodexo per their contract are significantly less than the prices Mines charges students under the meal plans.

¶ 10 The Code says the City may levy a three percent sales tax on the "purchase price" of "all sales of tangible personal property and services," including food, unless expressly exempted. GMC § 3.03.010. Sodexo collects and remits sales tax on campus food

---

[2] The contract contemplates monthly reports, but it appears from the record that Mines may provide weekly reports.

purchases made with cash, check, or credit card.[3]  But the City has also assessed Sodexo sales tax on transactions whereby students swipe their BlasterCards in exchange for meal plan meals in the dining facilities.  (Paradoxically, however, the City assesses the tax based on the prices Mines pays Sodexo, not on the prices students pay Mines.[4])  As noted, Sodexo's challenges to this assessment have thus far failed.

## II.  Discussion

¶ 11     Sodexo contends that the City can't tax it for meals purchased by Mines' students under the students' contracts with Mines because (1) doing so interferes with Mines' constitutional authority to exercise "exclusive control and direction" of its funds and appropriations; (2) doing so unconstitutionally taxes Mines' students' acquisition of education furnished by the State; (3) Sodexo's sales of food to Mines under their contract are excluded

---

[3] Sodexo concedes that these sales are subject to the sales tax, and therefore they are not at issue.

[4] According to the Code, the purchase price is "the price to the consumer."  GMC § 3.02.10.  The sales tax rate is "three percent of the purchase price."  *Id.* at § 3.03.10(a).  The City claims that the student is the consumer, but the City doesn't assess Sodexo based on the price to that consumer.  Rather, it assesses three percent on the lower price Mines pays Sodexo.

from taxation under the Code as direct sales to Mines in its governmental capacity only; and (4) Sodexo does not sell food to students at retail, but instead sells food to Mines at wholesale, and the Code expressly exempts wholesale sales from taxation. Because we conclude that Sodexo doesn't sell food to students at retail, and that the Code's wholesale exemption applies to the sales Sodexo makes to Mines, we don't address Sodexo's first three contentions.[5]

## A. Standard of Review and Applicable Law

¶ 12    We review an order granting summary judgment de novo. *Hamon Contractors, Inc. v. Carter & Burgess, Inc.*, 229 P.3d 282, 290 (Colo. App. 2009). We similarly review the interpretation of a municipal ordinance. *See Friends of Denver Parks, Inc. v. City & Cty. of Denver*, 2013 COA 177, ¶ 45; *Leggett & Platt, Inc. v. Ostrom*, 251 P.3d 1135, 1140 (Colo. App. 2010) (construing tax ordinances, including a tax exemption provision).

---

[5] Sodexo urges us to decide this case on constitutional grounds, as do the other public institutions of higher education that have filed a brief as amici curiae. But we avoid constitutional analysis if we can resolve a case on statutory grounds. *City of Florence v. Pepper*, 145 P.3d 654, 660 (Colo. 2006); *see also Taxpayers for Pub. Educ. v. Douglas Cty. Sch. Dist.*, 2015 CO 50, ¶ 11, *cert. granted, judgment vacated, and case remanded*, 582 U.S. ___ (2017).

¶ 13    We construe such ordinances the same way we construe statutes, and so our ultimate goal is to determine and give effect to the municipality's intent.  *Leggett & Platt*, 251 P.3d at 1141; *Waste Mgmt. of Colo., Inc. v. City of Commerce City*, 250 P.3d 722, 725 (Colo. App. 2010).  To do this, we look first at the ordinance's plain language.  But we don't look at the language in isolation: we must consider the language in context, looking to related provisions and construing them in a way that gives effect to all, in a harmonious way, if possible.  *Leggett & Platt*, 251 P.3d at 1141; *Waste Mgmt.*, 250 P.3d at 725.

¶ 14    If, after doing all this, we conclude that the ordinance's meaning is clear, we won't apply other rules of statutory interpretation.  But if we conclude to the contrary — that is, that the relevant language is ambiguous — those other rules come into play.  *Leggett & Platt*, 251 P.3d at 1141; *Waste Mgmt.*, 250 P.3d at 725.

¶ 15    A couple of special rules guide our interpretation of tax provisions.

¶ 16    First, as a general matter, we construe provisions purporting to impose a tax narrowly in the taxpayer's favor.  *Associated Dry*

*Goods Corp. v. City of Arvada*, 197 Colo. 491, 496, 593 P.2d 1375, 1378 (1979) ("[T]axing powers and taxing acts will not be extended beyond the clear import of the language used . . . ."); *Coors Brewing Co. v. City of Golden*, 2013 COA 92, ¶ 18; *Noble Energy, Inc. v. Colo. Dep't of Revenue*, 232 P.3d 293, 296 (Colo. App. 2010). This first rule requires us to resolve all doubts regarding imposition of a tax against the taxing authority. *Associated Dry Goods*, 197 Colo. at 496, 593 P.2d at 1378; *Noble Energy*, 232 P.3d at 296.

¶ 17    Second, we construe tax exemptions narrowly in the taxing authority's favor. *Catholic Health Initiatives Colo. v. City of Pueblo*, 207 P.3d 812, 817-18 (Colo. 2009); *Coors*, ¶ 18. This second rule requires us to resolve all reasonable doubts about whether an exemption applies against the taxpayer. *Catholic Health Initiatives*, 207 P.3d at 818; *Coors*, ¶ 18; *Noble Energy*, 232 P.3d at 296. And the taxpayer has the burden of clearly establishing that the exemption applies. *Catholic Health Initiatives*, 207 P.3d at 817.

### B.  Analysis

¶ 18    Section 3.03.010(a) of the Code provides that a three percent sales tax "is levied . . . upon all sales of tangible personal property and services specified in subsection 3.03.030(a)." As relevant for

our purposes, "sales of food, prepared food, or food for immediate consumption" are taxable sales. GMC § 3.03.030(a)(4).

¶ 19 Under the Code, "sale means the acquisition for any consideration by any person of tangible personal property or taxable services that are purchased." GMC § 3.02.010. And the Code defines "gross sales" as "the total amount *received* in money, credit, property or other consideration valued in money *for* all sales, leases, or rentals of tangible personal property or services." GMC § 3.02.010 (emphasis added). The plain language of the Code therefore limits taxable sales to exchanges where the one providing the tangible item receives consideration for the exchange.

¶ 20 In concluding that Sodexo makes meal plan sales directly to students, the district court erroneously determined that a sale occurs when a student swipes her BlasterCard. No sale by Sodexo occurs in that circumstance because, under the Code, a sale requires the receipt of consideration for the exchange, *see* GMC § 3.02.010, and a student doesn't give consideration to Sodexo (or, arguably, to anyone else) when she swipes a BlasterCard to obtain a meal under the meal plan or with Munch Money.

¶ 21    The relevant contracts and undisputed facts show that consideration is exchanged for food on two occasions: once when a student pays Mines for a meal plan or Munch Money, and again when Mines pays Sodexo periodically based on the number and types of meals provided to students pursuant to the students' agreements with Mines.  As noted, the meal plans and Munch Money are "use it or lose it" propositions.  The student can't get a refund from Mines if she uses less than what she has already paid for.  So the student isn't truly paying anything when swiping a BlasterCard; she is merely reducing the number of meals she can obtain in the future under her meal plan.  Certainly she is paying nothing to Sodexo.  Simply put, when a student uses a BlasterCard, she and Sodexo aren't engaging in a buyer-seller transaction.

¶ 22    As no sale by Sodexo occurs under the Code (as construed narrowly in favor of the taxpayer) when a student swipes a BlasterCard, Sodexo can't be responsible for sales tax for any such transaction.  *See* GMC § 3.03.010.

¶ 23    To be sure, sales occur under the Code when Mines pays

Sodexo for meals.[6]  But what kind of sales are they?  If they are

wholesale sales, as Sodexo contends, they are exempt from taxation

under subsection 3.03.040(a)(13) of the Code, which says that "[t]he

sales tax . . . shall not apply to . . . [a]ll wholesale sales."  We agree

with Sodexo that this exemption clearly applies to its sales to

Mines.

¶ 24    We begin, as we must, with the Code's definition of wholesale

sales.  Such sales are "sales to licensed retailers, jobbers, dealers or

wholesalers for resale."  GMC § 3.02.010.[7]  Sodexo sells meals to

Mines, a licensed retailer.  And Mines resells them to students at

prices significantly higher than Sodexo charges it under its contract

---

[6] Given that the City has thus far only sought to tax the
BlasterCard swipe transactions, we arguably don't need to
determine whether the parties' contractual relationships give rise to
any other taxable sales.  But we do so out of an abundance of
caution, and because the City's assessment is based on the prices
Mines pays Sodexo.

[7] The Code also distinguishes wholesale sales from "retail sales"
(defined as "all sales except wholesale sales") in the way it defines
"retailer": "any person selling . . . tangible personal property . . . at
retail."  GMC § 3.02.010.  As discussed, Sodexo doesn't sell to
students at all, and it doesn't sell to Mines at retail.  Mines, on the
other hand, sells to students at retail.

with Sodexo.  So Sodexo's sales to Mines meet the Code's definition of wholesale sales.  *See also* P.H. Collin, Dictionary of Business 474 (3d ed. 2001) (a wholesaler "buys goods in bulk at a wholesale discount").

¶ 25     The City's reliance on Sodexo's delivery of the meals to students misses the mark.  Though Sodexo also provides the service of delivering the meals to the students, it does so in Mines' stead.  The meals, under the express terms of the contract, are Mines' property.  And that is no less so just because Mines itself doesn't physically receive the meals.[8]

¶ 26     Even less appealing is the City's argument that because Mines is not the "ultimate consumer" of the meals, Sodexo can't be a wholesaler.  By definition, sales to end users are not wholesale sales.  *See* GMC § 3.02.010 ("Sales by wholesalers to consumers are not wholesale sales."); *see also* Black's Law Dictionary 1832 (10th ed. 2014) (defining "wholesale" as "[t]he sale of goods or commodities usu[ally] to a retailer for resale, and not to the ultimate consumer"); Encyclopedia of Small Business 1323 (Virgil L.

---

[8] The City fails to cite any authority for the proposition that a sale can't qualify as wholesale unless the purchaser takes physical possession of the goods.

Burton III ed., 2011) (defining "wholesaling" as "the selling of merchandise to anyone . . . other that the end consumer of that merchandise"). So the fact Mines isn't the ultimate consumer of the meals it buys from Sodexo actually supports Sodexo's position.[9]

¶ 27    In sum, we conclude that Sodexo's sales to Mines are wholesale sales under the plain language of the Code's exemption. Of this we have no reasonable doubt.

¶ 28    Though we rely on the plain language of the exemption as applied to the undisputed facts, we might be remiss if we failed to examine the issue using a test formulated by the supreme court to determine whether a sale is a wholesale sale.

¶ 29    In *A.B. Hirschfeld Press, Inc. v. City & County of Denver*, 806 P.2d 917 (Colo. 1991), the court, interpreting tax provisions of the Denver Municipal Code that are substantially similar to those at issue in this case, held that a wholesale purchase occurs if "the primary purpose of the transaction is the acquisition of the item for resale in an unaltered condition and basically unused by the

---

[9] That the contract between Sodexo and Mines doesn't use the word "wholesale" is, contrary to the City's argument, immaterial. The substance of the transaction is what matters, and nothing in the Code requires the taxpayer to formally label its transactions wholesale.

purchaser." *Id.* at 921; *see also Coors*, ¶ 21 (applying this test to the GMC's wholesale exemption). Mines doesn't alter or use the meals provided to students, and the economic reality of the parties' relationships is that Mines acquires the meals to resell to its students at a higher price. It follows that Sodexo's sales to Mines are wholesale sales under the primary purpose test.[10]

¶ 30    Decisions from other jurisdictions also support our conclusion that Sodexo makes wholesale sales. In *Slater Corp. v. South Carolina Tax Commission*, 242 S.E.2d 439 (S.C. 1978), for example, the South Carolina Supreme Court interpreted an almost identical statute under practically identical facts. In that case,

> [t]he students contracted with and paid the colleges, not [the food service supplier], for the meals. The colleges, in turn, contracted with and paid [the food service supplier]. The colleges, not [the food service supplier], determined who should be entitled to purchase meals at the dining hall, and if a refund was given, it came from the college, not from [the food service supplier].

---

[10] The court in *A.B. Hirschfeld Press, Inc. v. City & County of Denver* identified a number of factors a court may consider in this context. 806 P.2d 917, 921 (Colo. 1991). They don't support the City's position in this case, and indeed the City doesn't make any argument along those lines.

*Id.* at 440.[11]  Therefore, the court concluded, "[t]he meals in question were clearly purchased for resale with the students buying their food from the colleges rather than from [the food service supplier]."  *Id.*

¶ 31     In so holding, the *Slater* court drew from a Fifth Circuit case, *Hodgson v. Crotty Brothers Dallas, Inc.*, 450 F.2d 1268, 1281 (5th Cir. 1971), holding that a food service supplier on school premises qualified as a "retail establishment" pursuant to the Fair Labor Standards Act (FLSA).  The Fifth Circuit's holding in *Crotty Brothers* rested on the FLSA's definition of "retail or service establishments," which expressly included catering services.  *Id.* at 1280.  But in its analysis of the question, the court recognized the wholesale-like nature of the types of transactions in that case, this case, and *Slater*, noting, "even though no completed meals ever passed from [the caterer] to the school, it would seem more reasonable to characterize the transactions involving [the caterer], the school, and

---

[11] Mines gives no refunds.

the students as sales for resale than as sales directly from [the caterer] to the students." *Id.*[12]

¶ 32    *Hodgson v. Prophet Co.*, 472 F.2d 196 (10th Cir. 1973), on which the City relies, is distinguishable. In that case, the court, like the court in *Crotty Brothers*, held that a food service supplier that contracted with a college to serve students qualified as a "retail and service establishment" under the FLSA. Our case is not, of course, an FLSA case; we construe materially different tax provisions. And, in any event, the Tenth Circuit relied on aspects of

---

[12] Our determination also adheres to the more general principle we follow when interpreting tax provisions, as articulated by the Supreme Court in *Frank Lyon Co. v. United States*:

> Where, as here, there is a genuine multiple-party transaction with economic substance that is compelled or encouraged by business or regulatory realities, that is imbued with tax-independent considerations, and that is not shaped solely by tax-avoidance features to which meaningless labels are attached, the Government should honor the allocation of rights and duties effectuated by the parties . . . . [T]he form of the transaction adopted by the parties governs for tax purposes.

435 U.S. 561, 562 (1978). The City doesn't even allege that the transactions at issue are structured solely (or at all) as a tax-avoidance scheme.

16

the contract before it that differ in important respects from the one before us. As the court explained,

> All the college did . . . was to collect from each boarding student . . . the amounts the contract stipulated [the food service supplier] was entitled to receive . . . and remit the same to [the food service supplier]. In other words, all the college did was to act in the role of a collection agent, rather than a purchaser.

*Id.* at 204. The contract in that case "provided *that [the food service supplier] should charge* boarding plan students . . . $1.68 each per day . . . and that the college should remit the aggregate of such charges collected by it from boarding plan students monthly to [the food service supplier]." *Id.* at 199-200 (emphasis added).

¶ 33    In contrast to the terms of that contract, the contract between Sodexo and Mines stipulates that Mines will purchase from Sodexo all of the meals it requires to fulfill its contractual obligations to its students, after Mines alone determines the prices and terms of those plans. And Sodexo doesn't charge students. Further, the food service supplier in *Prophet Co.* contracted to "operate on its own credit and at its own risk of loss," *id.* at 206, whereas, in this case, only Mines, not Sodexo, bears the risk of loss if a student fails to pay for her meal plan.

17

¶ 34    Lastly, we acknowledge that our holding conflicts with the division's holding in *City of Golden v. Aramark Educational Services, LLC*, 2013 COA 45.  But with all due respect to the division, we disagree with its analysis.  In *Aramark,* the division held that although "both parties have presented several tenable arguments," "Golden's arguments are sufficiently tenable as to create reasonable doubts that [the food service supplier] is entitled to the wholesale sales exemption."  *Id.* at ¶¶ 32, 36.  The division stopped there, declining to determine which of the parties' "tenable" arguments was correct.

¶ 35    A "tenable" argument — that is, a merely nonfrivolous or defensible argument — isn't necessarily a correct one.  Though we're required to construe tax exemptions narrowly, resolving all reasonable doubts against the taxpayer, we don't think that means that a taxing entity's assertion of a nonfrivolous argument for refusing to apply an exemption can, entirely on the basis of having been articulated, carry the day.  Rather, we must resolve the meaning of the provision to ensure that a taxpayer isn't subjected to

a tax that, under the correct interpretation, it has no legal obligation to pay.[13]

¶ 36    The City's argument in this case is "tenable" but incorrect. Under the plain language of the Code, Sodexo makes wholesale sales to Mines; Sodexo doesn't make direct sales to students who use BlasterCards.  Therefore, under the Code, the City can't assess sales tax against Sodexo.

## III.  Conclusion

¶ 37    The judgment is reversed, and the case is remanded for entry of judgment for Sodexo and for any other proceedings consistent with this opinion.

JUDGE GRAHAM and JUDGE WELLING concur.

---

[13] We also observe that no other Colorado appellate case has taken this "tenable argument" approach, which treats the mere assertion of a nonfrivolous argument as dispositive.  In fact, in *Coors Brewing Co. v. City of Golden*, 2013 COA 92, the division subsequently construed the same wholesale exemption without using that approach.